**AFFIRM; and Opinion Filed August 15, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-13-00421-CR
No. 05-13-00423-CR
No. 05-13-00424-CR
No. 05-13-00425-CR

**THE STATE OF TEXAS, Appellant**

**V.**

**ALBERT G. HILL III, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F11-00180-Q, F11-00182-Q, F11-00183-Q, and F11-00191-Q**

## MEMORANDUM OPINION ON REMAND

Before Justices Bridges, Brown, and Schenck
Opinion by Justice Brown

This case is before us on remand from the Texas Court of Criminal Appeals. The State of

Texas appealed the trial court's order dismissing with prejudice four indictments against Albert G.

Hill III. In our original opinion, we held the trial court erred in conducting a pretrial evidentiary

hearing on Hill's motion to quash and dismiss the indictments because Hill did not establish a

prima facie case of alleged constitutional violations. We vacated the dismissal order and remanded

with instructions to reinstate the indictments. *See State v. Hill*, No. 05-13-00421-CR, 2014 WL

7497992 (Tex. App.—Dallas Dec. 29, 2014) (mem. op., not designated for publication), *rev'd*, 499

S.W.3d 853 (Tex. Crim. App. 2016). The court of criminal appeals disagreed and held the trial

court did not abuse its discretion in conducting an evidentiary hearing. *State v. Hill*, 499 S.W.3d

853, 871 (Tex. Crim. App. 2016). It remanded the case to us to address the State's two remaining issues challenging the dismissal of the indictments with prejudice. We allowed the parties to supplement their briefs, and we heard new oral argument. For the following reasons, we affirm the trial court's dismissal order.

The facts of this case have been recounted at length in our original opinion, a dissenting opinion, and in the court of criminal appeals's opinion. We thus do not recite them again in detail. In March 2011, a grand jury returned four indictments against Hill. Three indictments charged him with making false statements to obtain property or credit. TEX. PENAL CODE ANN. § 32.32 (West 2016). The fourth charged him with securing execution of a document by deception. *Id.* § 32.46 (West 2016). Hill moved to quash and dismiss the indictments due to three types of alleged prosecutorial misconduct. First, he maintained that due to influence exercised upon then Dallas County District Attorney Craig Watkins, the State deprived him of his due process right to a disinterested prosecutor. Second, Hill asserted the State engaged in vindictive prosecution because he was being prosecuted in retaliation for unrelated civil litigation. Lastly, Hill contended the State engaged in selective prosecution because the conduct for which he was being prosecuted did not normally lead to prosecution.

In deciding the issues related to the court's decision to hold an evidentiary hearing on Hill's motion, we looked only at the motion and attached exhibits. We now also consider the evidence presented at the evidentiary hearing, which took place over three days. Several assistant district attorneys testified, but Watkins, despite being ordered by the court to do so, did not. At the conclusion of the hearing, the court granted Hill's motion and dismissed the cases with prejudice. The court's order recites that Hill had been denied his right to a full and fair hearing on his motion

due to Watkins's refusal to testify at the hearing. The court determined the district attorney's office denied Hill his due process rights under the United States and Texas constitutions.[1]

In its third issue, the State contends the trial court abused its discretion by compelling Watkins's testimony and then dismissing the indictments based on his refusal to testify. In its original brief, the State contended Watkins was justified in refusing to answer questions about Hill's indictment under the work-product exemption. At oral argument after remand, however, the State withdrew this argument. We are left to consider whether the trial court was entitled to dismiss the indictments for the reasons asserted in Hill's motion to dismiss. The State maintains Hill did not establish he was entitled to dismissal for any of the three grounds in his motion—lack of a disinterested prosecutor, vindictive prosecution, or selective prosecution.

Prosecutors have broad discretion in deciding which cases to prosecute. *Neal v. State*, 150 S.W.3d 169, 173 (Tex. Crim. App. 2004). Courts must presume that a criminal prosecution is undertaken in good faith and in nondiscriminatory fashion to fulfill the State's duty to bring violators to justice. *Id.* As a result, the presumption of regularity supports prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).

It is well established that there is no general authority that permits a trial court to dismiss a case without the prosecutor's consent. *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003). A trial court may dismiss a charging instrument to remedy a constitutional violation, but such dismissal is "a drastic measure only to be used in the most extraordinary circumstances." *Id.*

---

[1] The trial court signed the order dismissing the indictments on March 7, 2013, and the State filed its notice of appeal on March 27, 2013. The trial court made written findings of fact and conclusions of law on August 2, 2013, after both the clerk's record and the reporter's record were filed. Once the record is filed in the court of appeals, the trial court loses jurisdiction until it receives a mandate from the appellate court. *Berry v. State*, 995 S.W.2d 699, 700 (Tex. Crim. App. 1999); *see* TEX. R. APP. P. 25.2(e). The trial court was therefore without jurisdiction to make findings of fact and conclusions of law in August 2013. The court's findings and conclusions are null and void, and we may not consider them. *See Berry*, 995 S.W.2d at 701.

at 817 (citing *State v. Frye*, 897 S.W.2d 324, 330 (Tex. Crim. App. 1995)). We review a trial court's ruling on a motion to dismiss a charging instrument for an abuse of discretion. *See State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998); *State v. Perez*, 906 S.W.2d 558, 559 (Tex. App.—San Antonio 1995), *aff'd*, 947 S.W.2d 268 (Tex. Crim. App. 1997). Where there is no constitutional violation, or where the defendant's rights were violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the indictment without the consent of the State. *Mungia*, 119 S.W.3d at 817.

A decision to prosecute violates due process when criminal charges are brought in retaliation for the defendant's exercise of his legal rights. *Neal*, 150 S.W.3d at 173. Under specific, limited circumstances, the presumption that a prosecution is undertaken in good faith gives way to either a rebuttable presumption of prosecutorial vindictiveness or proof of actual vindictiveness. *Id.* The trial judge decides the ultimate factual issue based upon the evidence and credibility determinations. *Id.* at 174–75.

In addition, the absence of an impartial and disinterested prosecutor can also violate a defendant's due process rights. *In re Guerra*, 235 S.W.3d 392, 429 (Tex. App.—Corpus Christi 2007, orig. proceeding). Partiality in this context is like a conflict of interest in the sense that the prosecutor has a personal interest in the outcome of the criminal prosecution. *Id.* at 430. It also refers to any interest that conflicts with the prosecutor's duty to seek justice. *Id.* Thus, the due process rights of a defendant are violated when a prosecuting attorney who has a conflict of interest relevant to the defendant's case prosecutes the defendant. *Id.* at 429. The "mere potential or perceived conflict of interest" is not sufficient to establish a due process violation. *Id.* at 430. Nor are the mere allegations of wrongdoing. *Id.*

Under the unique facts of this case, we cannot conclude the trial court's determination that Hill's due process rights were violated was an abuse of discretion. Hill and his wife were both indicted in March 2011 for allegedly making false and misleading written statements to a bank in seeking a $500,000 home equity loan. The case was first brought to the attention of the district attorney's office in February 2010 via a complaint made by Hill's father, through his lawyer. At the time, Hill and his father were on opposing sides of litigation in federal court over a family trust. The complaint was made to the Chief of the Specialized Crime Division just four days after the judge in the trust case found that Hill's father had testified falsely and submitted evidence in bad faith. The essence of the complaint was that Hill and his wife claimed a 100% ownership interest in their home, when they instead owned only a 20% interest and the other 80% was owned by the Albert Hill Trust. The bank did not complain of Hill's conduct. The loan was fully collateralized, and it is undisputed that the loan was repaid prior to Hill's indictment. The indictments against Hill's wife were dismissed within six months after they were returned.

In addition, after a settlement in the federal trust litigation, Hill was involved in a fee dispute with his former lawyer in that case. Hill's former lawyer testified by deposition about a phone call she received from Watkins shortly before Hill was indicted. Watkins said, "[T]here could be an indictment or are you still interested in the indictments." The attorney stated she told Watkins she did not represent the Hills anymore and it would be inappropriate for her to talk about it.

On the first day of the hearing on the motion to dismiss, Hill's former attorney took the stand and invoked the Fifth Amendment on all questions. On the second day of the hearing, when Hill called Watkins to testify, the State objected on grounds of attorney–client privilege. The trial judge disagreed and indicated she intended to limit his testimony to conversations he had with Hill's former attorney. The judge instructed prosecutors to "bring Mr. Watkins down." An

assistant district attorney confirmed that Watkins had been subpoenaed to be present that day. After a break, another assistant district attorney, who had been tasked with "calling Mr. Watkins down," represented that Watkins was in the office, that she had spoken to him, and that he was "not going to make himself available." Watkins told her it would be improper for him to "discuss issues that are clearly within the purview of his discretion as the District Attorney." When the judge asked the assistant district attorney if she had informed Watkins that the scope of questions would be limited, the assistant district attorney stated that she knew Watkins to be ill and not in a condition to be able to testify. The judge granted a continuance.

Watkins was present at proceedings on March 7, 2013. Over the State's work-product and attorney–client privilege objections, the trial court required Watkins to testify. Hill's counsel asked Watkins about phone calls between Watkins and Hill's former counsel related to Hill and the indictments. Watkins refused to answer any questions "because of [his] right as an attorney to have the privilege and to protect [his] work product." The judge ordered Watkins to answer the questions. He refused.

The former first assistant district attorney, the highest ranking deputy in the office, testified about her participation in a pitch session at which a decision was made to indict Hill. Watkins was present at the pitch session. Long before the pitch session, two assistant district attorneys asked the former first assistant for permission to investigate the complaint against Hill made by his father. She approved the request, but because of the lawsuit between father and son, warned them to be "very, very skeptical of whatever [Hill's father] may have told you." She also warned that Hill's father was "using the office . . . for his own purpose of getting an advantage over his son."

The assistant district attorney who presented this case to the grand jury testified that the case came to her attention in February 2010 when she was called into a meeting with Hill's father's attorneys. She received a copy of their complaint. Sometime later, possibly April 2010, she

received another complaint in the case from David Pickett, trustee of the trust with an ownership interest in Hill's house. Several months later, Pickett wrote that assistant district attorney to urge her to pursue the case. She stated he was angry because it had not been presented yet. She denied giving Pickett the impression she was not interested in pursuing the case. The assistant district attorney testified she could not use the documents Pickett gave her in trial and had to have her "own set of documents under business records affidavit." She indicated that from the moment she got the complaint, in her mind, she had a good case and was "always presenting it to the Grand Jury." No one implied that her supervisor would be upset if she did not present the case to the grand jury. She testified that this case was "one of the easier cases [she] had." She also said she was certain at the "outset of reading that complaint that there was evidence to support it."

That assistant district attorney invited Watkins to a pitch session about the case and testified she thought she had to do a pitch session with him because of the media attention the case would attract. She testified she spoke to Watkins about the case only on the day she did the pitch. If he had called someone before the pitch meeting to talk about the indictments, she did not have any knowledge of that. The assistant district attorney would not have put the case before the grand jury if Watkins had told her to let it go. But she was confident she had a good case; it never crossed her mind that Hill and his wife would not be indicted.

During her testimony, the assistant district attorney who presented the case to the grand jury was impeached with handwritten notes she made about her conversations with Pickett. On September 8, 2010, she wrote that Pickett "calls all the time." She told him the investigation was going slowly. He wanted a definite timeline. She told him the bank was not interested in prosecuting. Pickett said the trust was the actual victim. The assistant district attorney told him that after doing research, she did not see how she could prove his criminal case at that time. She consulted with the former first assistant, who told her to go ahead with the investigation. The

–7–

assistant district attorney testified she spoke to the bank's general counsel who told her the bank would not have filed a complaint because the loan was repaid. The judge noted that the witness appeared to contradict her previous testimony. The judge asked her, "The bank is not interested in prosecuting, and your client is not a victim; that's what you told Mr. Pickett?" She responded, "Yes." In addition, the assistant district attorney later went back and added to her notes. She added that she had talked to Pickett multiple times since her original note and that he was okay with not indicting "for the trust as a victim" and going forward with indictments listing the bank as the victim. The assistant district attorney acknowledged she "probably" added that note sometime after Hill filed his motion to dismiss.

Further, there was evidence a law partner of Hill's father's lawyer donated a total of $48,500 to Watkins's campaign. In June 2010, the partner made a $10,000 donation. On September 23, 2010, a couple of weeks after the assistant district attorney who presented the case to the grand jury noted the problems prosecuting the case against Hill, the law partner made a pledge of $33,500 to Watkins. Later, he donated another $5,000 to Watkins.

On the issue of vindictive prosecution, the parties disagree about whether we apply the rebuttable presumption of prosecutorial vindictiveness under the facts of this case. We need not decide whether there is a rebuttable presumption, however, because Hill presented evidence from which the trial court could have found actual vindictiveness. *See Neal*, 150 S.W.3d at 173. Watkins had the ultimate authority to approve or refuse the presentation of Hill's case to the grand jury. The bank did not complain of Hill's conduct in connection with the loan. Hill's father raised the complaint after an adverse decision in his trust litigation against Hill. Also, around this same time, a law partner of Hill's father's attorney made donations or pledges to Watkins's campaign. Further, shortly before the indictments were handed down, Watkins called Hill's former attorney, who was engaged in fee dispute litigation against Hill, to talk about the indictments. Hill's

allegations of prosecutorial misconduct centered on Watkins, but Watkins refused to testify. And the assistant district attorney who presented the case to the grand jury and testified about the decision to prosecute was impeached. Before she presented the case to the grand jury, she wrote that she did not see how she was going to prove the case. Yet after Hill raised the issue of prosecutorial misconduct, she added to her notes and testified that it was a good case and there was evidence to support it. This misconduct, by a career prosecutor, shows the depth of the taint in this case. In conjunction with the other evidence, the testimony of that assistant district attorney cast doubt on the whole process.

We defer to the trial judge's determination of the credibility of the witnesses and her discretion to determine that a constitutional violation occurred under these facts. *See id.* at 174–75. The trial court had discretion to determine that Hill not only overcame the presumption of regularity, but presented clear evidence he was indicted in retaliation for the civil litigation involving his father and/or his former attorney. In addition, for these same reasons, the court could have determined that Hill was denied his right to a disinterested prosecutor because Watkins was under the influence of Hill's father and/or Hill's former attorney and that this influence conflicted with Watkins's duty to seek justice. We conclude the trial court did not abuse its discretion in determining that Hill's due process rights were violated. We overrule the State's third issue.

In its fourth issue, the State asserts the trial court erred in dismissing the cases with prejudice. The remedy for a constitutional violation must be tailored to the particular constitutional violation and the taint of that violation to be neutralized. *Mungia*, 119 S.W.3d at 816–17. A trial court abuses its discretion by dismissing an indictment when dismissal is not necessary to neutralize the taint of the constitutional violation at issue. *See Terrazas*, 962 S.W.2d at 42; *Frye*, 897 S.W.2d at 330.

According to the State, the alleged taint was presentation of the case to the grand jury with impure motives. It contends dismissal without prejudice would have sufficed. The State maintains any taint could have been cured by forcing the State to obtain new indictments. It asserts the district attorney could have opted to appoint a prosecutor pro tem to decide whether to reindict. Although Watkins is no longer the district attorney, the trial judge could not have known he would later lose his bid for reelection. The facts of this case are egregious and amount to the kind of extraordinary circumstances that warrant the drastic measure of dismissal with prejudice. *See Frye*, 897 S.W.3d at 330. To ensure that the State's decision to prosecute Hill would not be tainted by Watkins's involvement, the trial judge acted within her discretion in dismissing the indictments with prejudice. Given the prosecutorial misconduct in this case, such a drastic measure was appropriate. We overrule the State's fourth issue.

We affirm the trial court's order.

/Ada Brown/
ADA BROWN
JUSTICE

Publish
TEX. R. APP. P. 47.2(b).

130421F.P05

–10–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00421-CR     V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00180-Q.
Opinion delivered by Justice Brown,
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the trial court's order granting the motion to dismiss is **AFFIRMED**.

Judgment entered this 15th day of August, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00423-CR     V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F11-00182-Q.
Opinion delivered by Justice Brown,
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the trial court's order granting the motion to dismiss is **AFFIRMED**.

Judgment entered this 15th day of August, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00424-CR  V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-00183-Q.
Opinion delivered by Justice Brown,
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the trial court's order granting the motion to dismiss is **AFFIRMED**.


Judgment entered this 15th day of August, 2018.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS, Appellant

No. 05-13-00425-CR        V.

ALBERT G. HILL III, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F11-00191-Q.
Opinion delivered by Justice Brown,
Justices Bridges and Schenck participating.

Based on the Court's opinion of this date, the trial court's order granting the motion to dismiss is **AFFIRMED**.


Judgment entered this 15th day of August, 2018.