COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-21-00216-CR |
| Appellant, | § | Appeal from the |
| v. | § | 210th Judicial District Court |
| IVAN GABALDON, | § | of El Paso County, Texas |
| Appellee. | § | (TC#20210D02909) |

## **O P I N I O N**

The State of Texas indicted Appellee Ivan Gabaldon for murder for the February 22, 2021, death of Juan Garcia Flores. The State reindicted Gabaldon for capital murder the day after the trial court indicated it would deny the State's motion to continue the trial date. Concluding the State reindicted Gabaldon in retaliation for his insistence to proceed to trial, the trial court granted Gabaldon's motion to dismiss the indictment based on prosecutorial vindictiveness. We affirm the trial court's dismissal.

## **BACKGROUND**

On March 10, 2021, a grand jury indicted Gabaldon for the February 22, 2021 killing of Juan Garcia Flores. In this first indictment, the State accused Gabaldon of committing murder pursuant to Texas Penal Code § 19.02, which is punishable by imprisonment "for life or for any term of not more than 99 years or less than 5 years." TEX.PENAL CODE ANN. §§ 19.02(c); 12.32.

In September 2021, Gabaldon filed a motion for inspection of physical evidence alleging the State had not allowed his defense team to inspect the physical evidence associated with his case or provided them with a copy of a March 5, 2021 statement he gave to law enforcement. In addition to seeking access to the evidence associated with his case, Gabaldon also requested that "given the extreme, unwarranted delay, and the severe deprivation to [his] constitutionally-protected liberty interest" the trial court also deny "any continuances requested by the State for additional time for DNA testing and proceed forward with trial without those results . . . ."

In the October 5, 2021 hearing on the motion for inspection, Gabaldon's attorneys expressed their concerns that a month from the then scheduled trial date, the State had not provided them with a copy of Gabaldon's statement to law enforcement or permitted them to inspect any of the physical evidence. The prosecutor representing the State acknowledged his office had just received Gabaldon's statement the day before the hearing and it had not sent any of the physical evidence to the Texas Department of Public Safety Crime Lab for testing, which apparently takes up to six months to complete. The State acknowledged at a later hearing that it "effectively did nothing" on the case for at least six months. Despite the lack of access to the evidence, Gabaldon expressed to the trial court during the October 5 hearing that he was ready for trial and that any requests for "continuances made by the State be denied and we go to trial[.]" The trial court, however, moved the trial date from November 5 to December 2, 2021, because it did not have a jury panel available for November.

A number of motions pertinent to this appeal were filed by both parties in mid November. On November 10, the State filed a notice indicating it had provided the defense with a translation of Gabaldon's March 5 statement, which he had given in Spanish. Gabaldon objected to the translation as untimely under Texas Rule of Evidence 1009 and asked the trial court to find it

inadmissible at trial. On November 12, the State filed an objection to conducting *voir dire* while the prospective jurors were wearing masks or other face coverings as required by the trial court's Covid-19 protocols. Three days later, on November 15, the State, through its new lead prosecutor, Curtis Cox, filed a motion for continuance of the December 2 trial date. It cited three reasons why it needed a continuance: (1) Cox had jury duty on December 3; (2) it had not completed its forensic testing; and (3) it had not located three witnesses, including Priscilla Valenzuela who, according to the State, may "possess knowledge that the State has identified as being potentially exculpatory." Gabaldon filed his objection to the State's motion for continuance the same day and requested the trial court dismiss the indictment "because of a denial of [his] constitutional right to a speedy trial[.]"

The trial court held a hearing on these motions on November 16. Cox, for the State, agreed that the translation of Gabaldon's statement was untimely and it would be "excludable for this coming trial date." He indicated, however, that "[i]f for some reason the trial date should get moved" he did not "think the same concern applies." Regarding the State's objection to the trial court's Covid-19 protocols, Cox stated he was "aware of a fairly copious set of case law" indicating it is reversable error if the defendant cannot see the faces of prospective jurors during *voir dire*. Gabaldon countered that the State's objection to the Covid-19 protocols and motion for continuance was only for delay because of its "lack of preparation." The State, according to Gabaldon, admitted it could not enter Gabaldon's translated statement, had not prepared its witnesses, and the D.N.A. testing was not done. Gabaldon's attorney insisted the State's motion to continue the December 2 trial date be denied:

> MR. CARMONA: And, your honor, look, I'm going to get into this because my client's the one in custody right now and he's been in custody since late February. So we want to try this case right away, okay? My client's family is starving in

3

Mexico without him working, so I'm going to do everything I can to push this case to trial.

The State—despite opposing a bond earlier in the case based on the nature of the crime and the risk of Gabaldon absconding to Mexico—immediately interjected stating it would not oppose releasing Gabaldon on a personal recognizance bond if the trial date was postponed:

> MR. COX:     Well, and if I might interject on that point. Since I am moving for a continuance I am not going to take the position that I'm opposed to the Court lowering the Defendant's bond to an amount that he could afford and get out.
>
> MR. CARMONA:     He can't afford it. I'll just—he can't afford it. It's got to be a PR bond or there's, you know—we're in the same situation.
>
> MR. COX:     Okay. Because the State is saying it is not ready, I am not going to object to that.

The trial court did not rule on any of the motions from the bench. But it did tell the State that its neglect in preparing for a murder trial for six months was not a good excuse for it to get a continuance and "that's on you-all for that." The trial court, however, wanted to review the State's case law in connection with its objection regarding its Covid-19 *voir dire* protocols before issuing a ruling. It concluded by telling the parties to "operate knowing that we're going forward for now."

Almost immediately after being informed the motion for continuance was likely to be denied, the State told the trial court it was going to ask a grand jury to reindict Gabaldon for capital murder:

> MR. COX:     And, Your Honor, just to be completely transparent, I am also planning to take this case back to the grand jury to reindict it as a capital murder.
>
> THE COURT:     Okay.
>
> MR. COX:     That will happen assuming we can get a quorum before the trial date in this case. And then we will decide whether to seek the death penalty.

Gabaldon argued that this reindictment was just another way for the State to delay the trial:

4

MR. CARMONA:      But, you know, we're in a situation where weeks before trial now we're---you know, now we're looking at a capital murder. And my thought is this is just a way to delay. We are ready and if they indict, Your Honor, we are willing to waive our ten days.

.            .            .

MR. COX:      I do not think you can do that while we consider whether to seek the death penalty. However, I will seek the death penalty if that's what becomes necessary.

The next day, November 17, a grand jury reindicted Gabaldon for capital murder under Texas Penal Code § 19.03.[1] On November 18, the State amended its motion for continuance stating that because of the reindictment it "needs additional time to determine whether to seek the death penalty[.]" The trial court orally denied the State's motion for continuance on November 19 and stated the parties "are set for trial on December 2nd." And three days later—six days after offering Gabaldon a personal recognizance bond and only ten days before trial—the State filed its Notice of Intent to Seek the Death Penalty. By seeking the death penalty, the State increased the range of punishment Gabaldon faced if convicted from five years to life imprisonment to a minimum of imprisonment for life without parole or death. TEX.PENAL CODE ANN. §§ 12.31(a), 12.32.

Gabaldon filed a motion to dismiss the next day arguing the State violated his due process rights by punishing him for insisting on moving ahead with the December 2 trial. Specifically, it argued the State reindicted him for capital murder and then sought the death penalty because he exercised his right to a speedy trial. As actual proof of vindictiveness, Gabaldon pointed to the State telling the trial court it was going to seek a reindictment for capital murder only moments

---

[1] The trial court granted the State's motion to dismiss the murder indictment under trial court cause number 20210D00530. The capital murder charge, which is the subject of this appeal, is under trial court cause number 20210D02909. The trial court also granted the State's motion to carry over all filings the parties made under the original murder indictment to the new capital murder indictment.

after offering him a personal recognizance bond and informed by the trial court that its request for a continuance was going to be denied. Gabaldon also suggests the State threatened him with the death penalty when his attorneys suggested they would still proceed with the trial date even if there was a reindictment for capital murder.

The State denied it reindicted Gabaldon because of his objection to its request for a continuance. Instead, it claimed in its written response, the new lead prosecutor, Cox, decided to reindict Gabaldon for capital murder when he reviewed the evidence and discovered "the victim was targeted for robbery and murder due to his sexual orientation." He also discovered Gabaldon stabbed "the victim approximately 20 times while the victim was on his knees" and "acted with a level of ferocity and overkill indicative of a hate-filled mind." The murder, according to the State, was "the equivalent of a hate crime" and it needed to make a statement "that such a crime is intolerable" and "subject to the ultimate penalty available under Texas criminal law." Two pages later, however, the State stated it agreed to allow Gabaldon out on a bond because the nature of his crime shows he "has the presence of mind necessary to conform his behavior while being watched by the criminal justice system."

After holding an evidentiary hearing on Gabaldon's motion to dismiss, the trial court orally granted the motion and dismissed the indictment:

> THE COURT: I, having reviewed and listened to the arguments of or the reasoning of the State of Texas regarding what I think I have characterized as two decisions[.]
>
> .          .          .
>
> There are several points that the Defense has brought up or highlighted, but clearly I was present for all of those hearings and I saw the proceedings transpire as they did. I simply find the State's reasoning and explanations for its decision to reindict and ultimately seek the death penalty as not credible.
> I am therefore granting the Defense Motion to Dismiss for Prosecutorial Vindictiveness.

It continued by explaining it felt the State's decision to reindict and seek the death penalty was retribution for Gabaldon's insistence to proceed to trial: "But I do feel that the Defense has provided sufficient evidence that the reindictment and the decision to seek the death penalty was an unjustifiable penalty resulting solely from Mr. Gabaldon's exercising his right to go to trial." The trial court subsequently issued a written order granting the motion to dismiss with prejudice. It stated that in deciding the motion it considered "all hearings held in the instant cause" and "all pleadings, motions, and hearings held" under the original murder indictment." This appeal followed.

## DISCUSSION

### Issues

The State asserts two issues on appeal. In its first issue, the State argues the trial court abused its discretion by granting Gabaldon's motion to dismiss for prosecutorial vindictiveness. In its second issue, it asserts that even if the trial court properly dismissed the indictment, dismissing it "with prejudice was an unwarranted overreaching error . . . ."

### Standard of review

"It is well established that there is no general authority that permits a trial court to dismiss a case without the prosecutor's consent." *State v. Hill*, 558 S.W.3d 280, 284 (Tex.App.—Dallas 2018, no pet.), *citing State v. Mungia*, 119 S.W.3d 814, 816 (Tex.Crim.App. 2003). A trial court can, however, dismiss an indictment to remedy a constitutional violation, but such dismissal is "a drastic measure only to be used in the most extraordinary circumstances." *Id., quoting Mungia*, 119 S.W.3d at 817. We review a trial court's order dismissing an indictment for an abuse of discretion. *Id.* "Where there is no constitutional violation, or where the defendant's rights were

7

violated but dismissal of the indictment was not necessary to neutralize the taint of the unconstitutional action, the trial court abuses its discretion in dismissing the indictment without the consent of the State." *Id.* The trial judge is responsible for deciding "the ultimate factual issue based upon the evidence and credibility determinations." *Neal v. State*, 150 S.W.3d 169, 174-75 (Tex.Crim.App. 2004). As a result, we give the trial court's determination of historical facts "almost total deference if they are reasonably supported by the record." *See State v. Dominguez*, No. 08-21-00036-CR, 2022 WL 3500209, at *2 (Tex.App.—El Paso Aug. 18, 2022, pet. filed) (not designated for publication).

*Applicable Law*

"Both Texas and federal courts recognize that prosecutors have broad discretion in deciding which cases to prosecute." *Neal*, 150 S.W.3d at 173. As a result, "[i]f the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether to prosecute and what charge to file generally rests entirely within his or her discretion." *Id., quoting State v. Malone Serv. Co.*, 829 S.W.2d 763, 769 (Tex. 1992). Courts, therefore, are required to presume that a prosecutor undertakes a prosecution in good faith. *Id.* A decision to prosecute, however, violates a defendant's constitutional right to due process "when criminal charges are brought in retaliation for the defendant's exercise of his legal rights." *Id.* Consequently, the United States Supreme Court has held that, "under specific, limited circumstances, the presumption that a prosecution is undertaken in good faith gives way to either a rebuttable presumption of prosecutorial vindictiveness or proof of actual vindictiveness." *Id., citing U.S. v. Goodwin*, 457 U.S. 368, 373 (1982).

The Texas Court of Criminal Appeals has stated that a constitutional claim of prosecutorial vindictiveness may be established in two ways: (1) "proof of circumstances that pose a 'realistic

likelihood' of such misconduct sufficient to raise a 'presumption of prosecutorial vindictiveness,' which the State must rebut or face dismissal of the charges;" or (2) "proof of 'actual vindictiveness'—that is, direct evidence that the prosecutor's charging decision is an unjustifiable penalty resulting solely from the defendant's exercise of a protected legal right." *Neal,* 150 S.W.3d at 173. Gabaldon concedes on appeal that he is not aided in this case by a presumption of prosecutorial vindictiveness. As a result, only the second type of vindictiveness—actual—is relevant to this appeal. In this type of action, the defendant "shoulders the burden of both production and persuasion, unaided by any legal presumption" to prove by a preponderance of the evidence "that the prosecutor's charging decision was a 'direct and unjustifiable penalty' that resulted 'solely from the defendant's exercise of a protected legal right.'" *Id.* at 174, *quoting Goodwin*, 457 U.S. at 384; *see also U.S. v. Moulder*, 141 F.3d 568, 572 (5th Cir. 1998)(stating in the context of a prosecutorial vindictiveness claim "[t]he defendant must prove the claim by a preponderance of the evidence . . . .").

*Analysis*

1. *The trial court did not abuse its discretion by granting Gabaldon's motion to dismiss.*

The State asserts three positions in support of its argument the trial court abused its discretion in granting Gabaldon's motion to dismiss: (1) Gabaldon "failed to meet his burden of production of evidence and persuasion to prove actual vindictiveness" because he did not present any objective evidence; (2) the State's reindictment for capital murder cannot be evidence of prosecutorial vindictiveness for Gabaldon's insistence on a speedy trial because it came *before* his motion for a speedy trial; and (3) even if there is a "modicum of evidence" of prosecutorial vindictiveness, the State rebutted it by explaining why it reindicted Gabaldon. We disagree with the State.

9

*A. Gabaldon produced objective evidence.*

We can quickly dispose of the State's first position. The State argues Gabaldon did not present *any* objective evidence in support of his motion to dismiss, but instead "relies only on counsel's argument," which is not evidence. The State, however, ignores the fact that Gabaldon offered as evidence all the filings by both parties and the reporters record for all the hearings that took place in his case. This is competent evidence. *See Estate of Hoskins*, 501 S.W.3d 295, 310 (Tex.App.—Corpus Christi-Edinburg 2016, no pet.)("Generally, an appellate court may presume that a trial court took judicial notice of its own records in the same case."). Further, the trial court noted in its oral order dismissing the case that it "was present for all of those hearings and [] saw the proceedings transpire as they did." Consequently, the State's position that Gabaldon did not present any objective evidence is without merit.

*B. Gabaldon demanded a speedy trial before the State indicated it planned to reindict him.*

In its second position, the State argues its reindictment of Gabaldon for capital murder could not be vindication for his insistence on a speedy trial because the "State put on the record the intent to reindict the case as a capital murder" before defense counsel moved for a speedy trial. Specifically, the State argues Gabaldon did not move for a speedy trial until moments after the State indicated it was going to reindict him for capital murder during the November 16, 2021 hearing on the State's motion for continuance. Before that, according to the State, all Gabaldon had done was repeatedly announce ready for trial and file a motion to dismiss for denial of his right to a speedy trial.

The State, however, takes to narrow a view of what a motion for speedy trial is. While the State is correct that merely announcing ready for trial does not constitute a demand for a speedy

trial, there is no formulaic requirement for what constitutes a proper motion for a speedy trial. *See Henson v. State*, 407 S.W.3d 764, 769 (Tex.Crim.App. 2013)("He claims that announcing ready was such a demand. However, this is not a *demand* for a speedy trial; instead, it merely asserts that he could go to trial at that moment should the State push for it."). The requirement of a speedy-trial demand is it be "at the very least, unambiguous." *Id.* While we have not found any relevant Texas case law, the Fifth Circuit Court of Appeals has held a demand for a speedy trial will "generally be an objection to a continuance or a motion asking to go to trial." *U.S. v. Duran-Gomez*, 984 F.3d 366, 378 (5th Cir. 2020), *quoting U.S. v. Frye*, 489 F.3d 201, 211 (5th Cir. 2007).

Here, Gabaldon asserted in a September 2021 motion that "given the extreme, unwarranted delay, and the severe deprivation to [his] constitutionally-protected liberty interest" the trial court should deny "any continuances requested by the State for additional time for DNA testing and proceed forward with trial without those results . . . ." And in an October 5, 2021 hearing, Gabaldon's attorneys stated he was ready for trial and any requests for "continuances made by the State be denied and we go to trial[.]" Even in the November 16 hearing—before the State made any mention of reindictment on the record—Gabaldon's attorney opposed the State's motion for continuance by insisting the parties proceed to trial:

> MR. CARMONA:     And, your honor, look, I'm going to get into this because my client's the one in custody right now and he's been in custody since late February. So we want to try this case right away, okay? My client's family is starving in Mexico without him working, so I'm going to do everything I can to push his case to trial.

All these oppositions to a continuance of the trial date are unambiguous demands for a speedy trial that Gabaldon made before the State indicated it was going to reindict him for capital murder. As a result, the State's position that Gabaldon did not assert his speedy trial rights until after the State said it was going to reindict him is meritless.

*C. The record supports the trial court's finding of prosecutorial vindictiveness.*

In its third position, the State argues that even if a modicum of evidence of prosecutorial misconduct exists, it "rebutted" the evidence by uncontradicted evidence. As an initial matter, the State's insistence it "rebutted" Gabaldon's claim of prosecutorial vindictiveness with uncontradicted evidence confuses the Court of Criminal Appeals prosecutorial vindictiveness standards. As mentioned, there are two ways to establish prosecutorial vindictiveness in Texas. *Neal*, 150 S.W.3d at 173. In certain situations, a "presumption of prosecutorial vindictiveness," may arise that requires the State to *rebut* the allegation or face dismissal of the charges. *Id.* The State argues throughout its brief that this presumption standard does not apply in this case. And Gabaldon agrees. Consequently, it is uncontested that Gabaldon carried the burden of proving the State acted with "actual vindictiveness." *Id.* The case law the State cites in its brief supporting its position that it rebutted Gabaldon's claim of prosecutorial misconduct, therefore, is inapplicable. *See Hood v. State*, 185 S.W.3d 445, 448 (Tex.Crim.App. 2006)(holding that prosecutor's explanation that enhancement paragraphs were added to a new indictment because their absence was an oversight was an objective explanation that rebutted any presumption of vindictiveness); *Ortegon v. State*, 267 S.W.3d 537, 541 (Tex.App.—Amarillo 2008, pet. ref'd)("For purposes of this opinion we will assume, *arguendo*, that we are required, at the minimum, to apply a presumption of vindictiveness.").

The State, nonetheless, had the right to challenge the evidence Gabaldon asserted as proof it acted with actual vindictiveness. Both here and at the trial court it did so by claiming that evidence discovered *after* its initial indictment of Gabaldon for murder supports its reindictment for capital murder. Specifically, it claims a witness gave a statement a month after the original indictment indicating the killing of Flores "occurred during a robbery to gain [Flores]'s truck and

sell it[.]" This "new evidence of a robbery" according to the State, "supported a reindictment to capital murder[.]" Further, Cox's evaluation of the case—after his late assignment to the case—revealed Gabaldon committed "a hate crime" "with a level of ferocity and overkill indicative of a hate-filled mind."

The trial court, however, found the "State's reasoning and explanations for its decision to reindict and ultimately seek the death penalty as not credible." It instead found the State's conduct "was an unjustifiable penalty resulting solely from Mr. Gabaldon's exercising his right to go to trial." And the factual findings are supported by the record. Less than three weeks before a murder trial, the State filed a motion for a continuance because, in part, it had not done any forensic testing or located key witnesses. In fact, the State admitted it "effectively did nothing" to prepare the case for trial for six months. Further, almost immediately after the trial court indicated it was likely going to deny the State's motion for continuance, Cox stated he planned to seek a reindictment for capital murder for a defendant whom only minutes earlier he had agreed should be released on a personal recognizance bond. When Gabaldon's attorneys insisted on proceeding to trial even if there was a reindictment, Cox argued they could not do so while the State considered whether to seek the death penalty, but he would "seek the death penalty if that's what becomes necessary." The State followed through with its plan by reindicting Gabaldon and filing its notice of intent to seek the death penalty.

The State urges this Court to take the factual determination away from the trial court. Specifically, it insists finding "the evidence of a robbery during the murder did not surface until after the original indictment . . . was not dependent on any credibility finding" and, thus, should

be reviewed by us *de novo*.[2] *See State v. Garcia*, 569 S.W.3d 142, 148 (Tex.Crim.App. 2018) ("Reviewing courts should afford 'almost total deference' to the trial judge's findings on matters of historical fact, especially when those findings 'are based on an evaluation of credibility and demeanor.' But 'application[s] of law to fact' or 'mixed questions of law and fact' are entitled to deference only if they 'turn[] on an evaluation of credibility and demeanor.' Otherwise, they are reviewed *de novo*."), *quoting Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). The State, however, misses the issue. The factual determination the trial court was required to make in this case was not whether the State had sufficient facts to seek a capital murder indictment and the death penalty, but whether it did so because Gabaldon insisted on his right to a speedy trial. The Court of Criminal Appeals tasked the trial court with making this factual determination. *Neal*, 150 S.W.3d at 174. And it determined the State violated Gabaldon's constitutionally-protected due process rights when it sought the reindictment and the death penalty as retribution for Gabaldon's insistence on proceeding to trial. Further, while dismissing an indictment is a drastic measure, we cannot picture a more extraordinary circumstance than the State abusing its power to seek an execution as a penalty for a defendant insisting on a constitutionally-guaranteed right. *Hill*, 558 S.W.3d at 284 (stating a trial court dismissing an indictment to remedy a constitutional violation is a "drastic measure only to be used in the most extraordinary circumstances."). As a result, we hold the trial court did not abuse its discretion in granting Gabaldon's motion to dismiss for prosecutorial vindication. We, therefore, overrule the State's first issue.

2. *The trial court did not abuse its discretion by dismissing the indictment with prejudice.*

---

[2] The State also insists that the fact that it notified Gabaldon and the court of its intent to seek reindictment before any mention of a speedy trial was made should also be reviewed *de novo*. As discussed, this claim does not have merit.

In its second issue, the State argues the trial court erred by dismissing the indictment with prejudice, which in effect instructs "the prosecutor not to proceed with future charges arising from the same offense." *Gaitan v. State*, 905 S.W.2d 703, 706 (Tex.App—Houston [14th Dist.] 1995, pet. ref'd). A trial court has discretion in cases involving egregious prosecutorial misconduct to dismiss an indictment with prejudice. *State v. Francis*, No. 13-14-00356-CR, 2016 WL 462696, at *3 (Tex.App.—Corpus Christi-Edinburg Feb. 4, 2016, no pet.)(mem. op., not designated for publication), *citing State v. Terrazas*, 962 S.W.2d 38, 41 (Tex.Crim.App. 1998)(en banc); *see also Hill*, 558 S.W.3d at 287 (affirming the dismissal of an indictment with prejudice because "[t]he facts of this case are egregious and amount to the kind of extraordinary circumstances that warrant the drastic measure of dismissal with prejudice."). A trial court abuses its discretion, however, if it dismisses an indictment "when dismissal is not necessary to neutralize the taint of the constitutional violation at issue." *Hill*, 558 S.W.3d at 287.

The State claims dismissal of the capital-murder charge cures any constitutional violation for prosecutorial vindictiveness. It should, therefore, according to the State, be allowed to reindict Gabaldon for murder. Gabaldon responds allowing the State to reindict him for murder would be wiping the slate clean by putting the parties back into the same position they were in before the State violated his rights. We agree with Gabaldon. The State reindicted Gabaldon for capital murder as a punishment for his opposition to their requests for a continuance. Allowing the State to now reindict Gabaldon for murder would be giving the State exactly what it sought when it retaliated: a continuance of the murder prosecution. The State would be getting a re-do. Consequently, we find dismissing the indictment with prejudice was necessary to neutralize the taint of the State's egregious conduct in this case. We, therefore, find the trial court did not abuse its discretion and overrule the State's second issue.

15

## CONCLUSION

For the foregoing reasons, we affirm the trial court's order dismissing the State's indictment for capital murder with prejudice.

YVONNE T. RODRIGUEZ, Chief Justice

February 7, 2023

Before Rodriguez, C.J., Soto, J., and Marion, C.J. (Ret.)
Marion, C.J. (Ret.)(Sitting by Assignment)

(Publish)