

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | No. 08-23-00034-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 327th Judicial District Court |
| | § | |
| ISAIAS BURCIAGA | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC# 20220D03763) |
| | § | |

## **OPINION**

Appellee Isaias Burciaga was indicted on three counts of smuggling of persons with intent to obtain a pecuniary benefit. Challenging a portion of the statute, Burciaga moved to quash the indictment on multiple constitutional grounds based on facial and as-applied challenges. After a brief hearing, the presiding judge of the 41st Judicial District Court granted Burciaga's motion by written order. The State appealed from the trial court's ruling as authorized by Article 44.01(a)(1) of the Code of Criminal Procedure.[1] Because we conclude the challenged portion of the statute is not facially unconstitutional, and because we also conclude the as-applied challenges were

---

[1] *See* Tex. Code Crim. Proc. art. 44.01(a)(1) (authorizing the State's appeal of an order dismissing an indictment).

prematurely brought, we reverse the trial court's order quashing the indictment and remand the cause for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Following a traffic stop, Burciaga was charged by indictment with three counts of smuggling of persons. *See* Tex. Penal Code Ann. § 20.05(a)(l)(A). Specifically, the charging instrument alleged Burciaga had knowingly used a motor vehicle to transport three individuals with intent to conceal them from a peace officer and to obtain a pecuniary benefit. The allegation that Burciaga committed the offense with the intent to obtain a pecuniary benefit enhanced the charge to a second degree felony with a minimum term of imprisonment of ten years. *See id*. § 20.05(b)(l)(C). The case was initially assigned to the 41st District Court of El Paso County.

Burciaga moved to quash the indictment on multiple constitutional grounds challenging a portion of the smuggling of persons statute on which charges were brought. He argued § 20.05(a)(1)(A) was preempted by several clauses of the U.S. Constitution, including its Supremacy Clause, Equal Protection Clause, and Due Process Clause, and further claimed the challenged provision was overbroad and vague in violation of the Fourth Amendment.

On December 9, 2022, the Honorable Annabell Perez, judge of the 41st Judicial District Court, presided over a hearing on Burciaga' motion to quash indictment. Predominately, Burciaga presented argument focusing on the constitutional grounds he raised by his motion: (1) that the State's prosecution was preempted by federal law; (2) that the State was selectively enforcing the law based on the defendant's race, ethnicity, or national origin, in violation of the Equal Protection Clause; and (3) that the challenged provision was overbroad and vague in violation of the Fourth Amendment. The State responded in opposition. When the court asked for a proffer about probable cause, defense counsel responded, "[i]t was a speeding." The State added that probable cause was

further developed after Border Patrol officers confirmed that the individuals who were being transported in Burciaga's vehicle were noncitizens. Before the court concluded the hearing and took the matter under advisement, the trial court indicated it considered the preemption argument as the strongest of Burciaga's challenges.

On January 5, 2023, Judge Perez signed a written order granting Burciaga's motion to quash indictment without specifying the basis for the ruling. Although the style heading of the order identified the case as then pending in the 327th District Court of El Paso County, the order's substance more particularly stated "[t]he hearing on the motion was held before the 41st Judicial District Court on the record when this case was pending in that court." The signature line thus provided for signature by Judge Annabell Perez. From that order, the State timely perfected its appeal. The State's notice identified the order by its January 5 date, but it identified the 327th Judicial District Court as the trial court from which the appeal was taken, not the 41st Judicial District Court.

After the State filed its opening brief, Burciaga filed in this Court a motion requesting an abatement and remand of the appeal for an evidentiary hearing. Like the State's appellate notice, the style of Burciaga's motion also identified the 327th Judicial District Court as the trial court from which the appeal originated. Addressing a point made by the State's brief, Burciaga's motion described that "the State raised the lack of evidence on record and claimed this lack of evidence allowed only a facial challenge to the constitutionality of the State statute." Although Burciaga pointed out that evidence had been received by proffer, he otherwise claimed an evidentiary hearing would assist the parties with briefing. And he further argued an evidentiary hearing would promote judicial economy by assisting this Court with the appeal. The State responded in

3

opposition to Burciaga's motion. It argued that, because Burciaga had prevailed in the trial court, he was not entitled to a "do-over" to expand the evidence needed for his "as applied" challenges.

Given that constitutional challenges were raised, this Court abated the appeal and ordered the trial court to conduct a hearing within 30 days to allow for the presentation of evidence in support of Burciaga's motion to quash indictment and for development of the record. The abatement order further instructed as follows: "the trial court shall prepare findings of fact and conclusions of law regarding *its ruling* on Burciaga's motion to quash." (emphasis added) Consistent with the State's notice of appeal and Burciaga's request for an evidentiary hearing, the order was directed to the 327th Judicial District Court.

At the start of the ordered hearing, the State objected on roughly the same procedural grounds as it had raised in its opposition to the hearing, which the trial court overruled. The parties agreed to the admission of multiple documentary exhibits. The State admitted a copy of Burciaga's indictment and a multi-page exhibit reflecting bar charts and pie charts of active and disposed cases in El Paso County involving smuggling charges during calendar year 2023. Burciaga admitted governmental records and press releases pertaining to prosecutorial efforts aimed at combatting human smuggling and trafficking networks. As for live witnesses, the State presented testimony from three law enforcement officers involved in Burciaga's traffic stop and arrest, and as well from an assistant district attorney who supervised the border prosecution unit of the District Attorney's office. Narrowing the scope of witness testimony, Burciaga expressly abandoned his Equal Protection argument during the hearing. After taking the matter under advisement, the Honorable Monique Velarde, judge of the 327th Judicial District Court, issued Findings of Fact

and Conclusions of Law, as directed by the abatement order, but she rendered no ruling on Burciaga's motion to quash indictment.[2]

After the appeal was reinstated, the parties filed supplemental briefing.

## II. ISSUES ON APPEAL

The State presents five issues on appeal. The State asserts that, because the trial court's ruling could be sustained on any of Burciaga's independent grounds, and for it to avoid procedural default on appeal, it intentionally attacked each of the constitutional claims raised by Burciaga's motion to quash indictment.[3] *See State v. Copeland*, 501 S.W.3d 610, 612–13 (Tex. Crim. App. 2016) (holding failure to argue a "theory of law" applicable to the case on appeal results in procedural default). As earlier stated, Burciaga's motion challenged a portion of the human smuggling statute on the following grounds: (1) that it is unconstitutional because it is preempted by federal law, (2) that it is unconstitutional because it violated the Equal Protection Clause and his Due Process rights, (3) that it is unconstitutionally overbroad, (4) that it is unconstitutionally vague, and (5) that it violates the Fourth Amendment. In the issues advanced on appeal, the State argued the trial court erred in granting Burciaga's motion to quash the indictment on each of the initial grounds asserted. In his appellee's brief, Burciaga stood firmly on three of his original

---

[2] Among Judge Velarde's conclusions of law, she determined the challenged statute did not regulate or infringe upon federal immigration law, and because she also found it was not being enforced in a manner to do so, it was not preempted by federal law. She found it did not violate the Equal Protection clause of the United States Constitution. And she concluded that the overbreadth challenge lacked merit. Otherwise, she concluded it was unconstitutionally vague because it failed to establish determinate guidelines for law enforcement. Also, she concluded it was facially invalid because it violated the Fourth Amendment by authorizing arrest and prosecution for constitutionally protected behavior. Because the evidentiary hearing was held by a different judge from the judge who rendered the ruling being challenged on appeal, and because the questions before us are questions of law, we decline to consider the substantive evidence of the transcript or the findings of fact and conclusions of law.

[3] In its amended briefing the State asserted the original order by Judge Perez remained intact as the challenged ruling of this appeal. We agree.

5

theories of law, but he expressly abandoned the following two: (1) that the statute was unconstitutionally overbroad, and (2) that it violated the Equal Protection clause.

On review, we only address the contested theories of the case—that is, preemption, vagueness, and violation of the Fourth Amendment—to determine whether the trial court's ruling can be upheld on any of these theories. *See Copeland*, 501 S.W.3d at 612–13 (stating appellate courts can uphold the trial court's ruling if it is correct under any "theory of law" applicable to the case, even if the trial court did not rely on that theory in making its ruling). Because Burciaga concedes that two of his theories are not applicable to the case, we only address State's issues one, four and five. We conclude there is no need to reach issues two and three as they are not applicable to the case and are unnecessary to the final disposition of the appeal. *See Copeland*, 501 S.W.3d at 612–13; Tex. R. App. P. 47.1.

### III. OVERALL STANDARD OF REVIEW

A trial court may not quash an indictment without the State's consent unless authorized by constitution, statute, or common law. *State v. Terrazas*, 962 S.W.2d 38, 40–41 (Tex. Crim. App. 1998) (en banc); *State v. Hill*, 558 S.W.3d 280, 284 (Tex. App.—Dallas 2018, no pet.) (citing *State v. Mungia*, 119 S.W.3d 814, 816 (Tex. Crim. App. 2003) ("It is well established that there is no general authority that permits a trial court to dismiss a case without the prosecutor's consent."). "A trial court may dismiss a charging instrument to remedy a constitutional violation, but such dismissal is a drastic measure only to be used in the most extraordinary circumstances." *Hill*, 558 S.W.3d at 284.

"We review a trial court's ruling on a motion to dismiss a charging instrument for an abuse of discretion." *Id*. In doing so, we apply a bifurcated standard of review. *State v. Krizan-Wilson*, 354 S.W.3d 808, 815 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 87–89

(Tex. Crim. App. 1997)). We apply a "de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id.* Otherwise, we must give almost total deference to a trial court's findings of facts that are supported by the record, as well as mixed questions of law and fact that rely upon the credibility of a witness. *Id.*

## IV. AS APPLIED CHALLENGES

Burciaga asserts on appeal that his "claims of unconstitutionality may be assessed as both facial and as applied challenges." As a preliminary statement, however, the State urges that because Burciaga's case has not yet gone to trial, and because he raised his constitutional challenges only by way of a motion to quash, his as-applied challenges are not yet ripe for review and should not be considered at this time. Based on the briefing and record presented, we agree with the State.

Because an as applied challenge most often requires a recourse to evidence, it has remained a long-standing principle that such challenges cannot be properly raised by a pretrial motion. *See State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 910 (Tex. Crim. App. 2011) (citing *Gillenwaters v. State*, 205 S.W.3d 534, 536 n.4 (Tex. Crim. App. 2006)). Rather, as the Court of Criminal Appeals directed, an as-applied challenge should be "brought during or after a trial on the merits, for it is only then that the trial judge and reviewing courts have the particular facts and circumstances of the case needed to determine whether the statute or law has been applied in an unconstitutional manner." *Id.* Indeed, the Court of Criminal Appeals reiterated two years thereafter that as-applied claims "must be reserved for another day," given that "the record is undeveloped and thus we do not yet know what evidence the State will present at trial to support its allegations." *State v. Rosseau*, 396 S.W.3d 550, 558 n.9 (Tex. Crim. App. 2013).

7

Burciaga acknowledges this established principle but, in citing to *Ex parte Perry*, 483 S.W.3d 884, 895 (Tex. Crim. App. 2016), he argues an exception applies to his case. In *Perry*, former Texas Governor Rick Perry argued that the abuse-of-official-capacity statute, under which charges were brought against him, was unconstitutional as applied to him because it violated the Texas Constitution's Separation of Powers provision. *Id*. at 890. In his case, the intermediate court of appeals had held that the Governor's separation of powers claim was not cognizable on pretrial habeas. *Id*. at 895. In reversing the appellate court's decision, the Court of Criminal Appeals held that pretrial habeas was an available vehicle for a government official to advance an as-applied separation of powers claim alleging the infringement of his own power as a government official. *Id*. at 898.

Although *Perry* permitted an as-applied claim in a pretrial habeas setting, the Court of Criminal Appeals particularly noted it had only allowed certain types of claims to be raised when "the rights underlying those claims would be effectively undermined if not vindicated before trial." *Id.* at 895 (citing *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). The Court explained that recognized exceptions involved double jeopardy claims or complaints regarding bail. *Id.* For an exception to apply in a habeas posture, it further instructed that the key question is whether "the resolution of the claim in the applicant's favor would result in his 'immediate release'; and whether the rights at issue 'would be effectively undermined' if the claim were not cognizable." *Id.* at 921.

Despite Burciaga's assertion otherwise, we conclude that *Perry* is unavailing. Putting aside the procedural distinction between a motion to quash and a habeas application, *Perry* reaffirms that as-applied challenges are not cognizable at pretrial except in carefully limited exceptions. *Id.* at 895–98. Specifically, *Perry* concluded that criminal charges arising from an elected official's performance of his duties and implication of the separation of powers qualified for such exception.

*Id.* at 989. But public officeholder concerns are not at issue here. Burciaga's charges neither arise out of his duties as an elected official, nor do they implicate any separation of powers claim. The charges instead stem from his conduct as a private citizen. Accordingly, Burciaga has not shown his as-applied challenges brought before trial are based on a recognized exception.

In support of his as-applied claims, Burciaga also argues the record of his case "was fully developed in the trial court," citing *London v. State*, 490 S.W.3d 503 (Tex. Crim. App. 2016). However, *London* is similarly distinguishable and other reasons undercut his argument. In *London*, the Court of Criminal Appeals considered whether the appellate court erred in not addressing a defendant's as-applied challenge on direct appeal when that challenge was not raised during trial. *Id.* at 506. Factually, *London* did not involve a pretrial setting, nor did it more specifically consider whether a pretrial hearing equated with a developed record at trial. *See London*, 490 S.W.3d at 508 (explaining the principle that an as-applied challenge should not generally be raised prior to trial "has more to do with an appellate court's ability to resolve a claim rather than whether that claim was properly brought to the trial court's attention").

Here, in contrast with *London*, the State neither announced ready for trial nor did it otherwise present its case against Burciaga. Thus, for this Court to hold the statute is unconstitutional as-applied would require that we speculate about the evidence the State would present at trial in support of the allegations. *See State v. Flores*, 679 S.W.3d 232, 243–44 (Tex. App.—San Antonio 2023, pet. ref'd) (holding that an as applied challenge to § 20.05(a)(1)(A) could not be addressed because courts cannot speculate about the evidence the State would present at trial). Additionally, Burciaga has not pointed us to any authority, and we find none, showing that a pretrial evidentiary hearing amounts to a fully developed record for

which an as-applied challenge can be raised. [4] And finally, as applicable to this case, the evidentiary hearing on which Burciaga relies was not presided over by the same judge who actually rendered the challenged ruling. We thus conclude that Burciaga's as-applied claims are all premature as they cannot be addressed at this stage of the proceeding and no recognized exception applies to these circumstances.

Accordingly, on this record, we hold that Burciaga's as-applied constitutional challenges, as raised by his motion to quash indictment, were premature and not cognizable as presented. To this extent, we sustain in part the State's first, fourth and fifth issues.

## V. FACIAL CHALLENGES

### A. Standard of review

"A facial challenge is an attack on a statute itself as opposed to a particular application." *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415 (2015). When resolving a facial challenge to the constitutionality of a statute, we focus "on the language of the statute itself rather than how it operates in practice." *McGruder v. State*, 483 S.W.3d 880, 883 (Tex. Crim. App. 2016) (internal quotation marks omitted). Whether a statute is facially constitutional is a question of law we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). "When the constitutionality of a statute is attacked, we usually begin with the presumption that the statute is valid[,] and that the

---

[4] The dissent remarks that Burciaga's as-applied challenge can be addressed pretrial because there was a "fully developed record . . . with undisputed facts." In support, Justice Soto points out that Article 28.01 of the Texas Code of Criminal Procedure allows a trial court to hold a pretrial evidentiary hearing. In general, we agree a trial court may hold a pretrial evidentiary hearing. *See, e.g., State v. Hill*, 499 S.W.3d 853 (Tex. Crim. App. 2016) (permitting a pretrial evidentiary hearing on defendant's motion to quash, which alleged that prosecutorial vindictiveness or selective prosecution had led a district attorney to bring an indictment in violation of defendant's due process rights). More specifically, however, we disagree that *Hill* can be read as broadly permitting or otherwise implying that as-applied constitutional challenges can be similarly addressed by an Article 28.01 hearing, or that a fully developed record results therefrom.

legislature has not acted unreasonably or arbitrarily." *Id.* at 14–15. "The burden normally rests upon the person challenging the statute to establish its unconstitutionality." *Id.* at 15. We "seek to interpret a statute such that its constitutionality is supported and upheld" and "make every reasonable presumption in favor of the statute's constitutionality, unless the contrary is clearly shown."[5] *Peraza*, 467 S.W.3d at 514 (citations omitted); Tex. Gov't Code Ann. § 311.021 (stating that courts presume "compliance" with the Texas and United States Constitutions)).

"[T]o prevail on a facial challenge" the challenger "must establish that the statute always operates unconstitutionally in all possible circumstances." *State v. Rosseau*, 396 S.W.3d at 557. The United States Supreme Court set out this no-set-of-circumstances standard in *United States v. Salerno*, 481 U.S. 739, 745 (1987). *See Ex parte Ellis*, 309 S.W.3d 71, 80 n.50 (Tex. Crim. App. 2010). The Supreme Court further explained in *Patel* that when assessing whether a statute meets the *Salerno* no-set-of-circumstances standard, it "has considered only applications of the statute in which it actually authorizes or prohibits conduct." *Patel*, 576 U.S. at 418.

## B. Preemption

In the remaining part of its first issue, the State contends that the challenged portion of the statute is not facially unconstitutional due to preemption by federal law.

### (1) Applicable law

A claim that a state statute is preempted by federal law is based on the Supremacy Clause of the United States Constitution, which provides that the laws of the United States "shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the

---

[5] We also note that when a party challenges the constitutionality of a statute, the Office of the Attorney General for the State of Texas must be notified and given the opportunity to enter an appearance in the case. *See* Tex. Gov't Code Ann. § 402.010. Burciaga duly notified the Attorney General in this case, but no counsel from the Office of the Attorney General entered a formal appearance.

Constitution of Laws of any state to the Contrary notwithstanding." *Arizona v. United States*, 567 U.S. 387, 398 (2012) (quoting U.S. Const. art. IV, § 2). A state law is preempted and without effect if it falls within an area reserved to federal law. *Maryland v. Louisiana*, 451 U.S. 725, 746, (1981); *Hyundai Motor Co. v. Alvarado*, 974 S.W.2d 1, 4 (Tex. 1998). With respect to immigration issues, the Constitution gives Congress the authority and power to "establish a uniform Rule of Naturalization." U.S. Const. art. I, § 8, cl. 4. It is therefore well-established that the federal government has "broad, undoubted power over the subject of immigration and the status of aliens[.]" *Arizona*, 567 U.S. at 394. Congress has exercised that power in enacting the Immigration and Naturalization Act (INA) found in Chapter 12, Title 8 of the United States Code.

In the immigration context, the United States Supreme court established three criteria under which state regulation affecting noncitizens is preempted: (1) if it regulates immigration—i.e., if it is "essentially a determination of who should or should not be admitted into the country"; (2) if the clear and manifest purpose of Congress was to completely oust state power in the area of regulation; or (3) if it is an obstacle to the accomplishment of the purposes of Congress. *DeCanas v. Bica*, 424 U.S. 351, at 355–69 (1976).

Because the constitutionality of a statute presents a question of law, we review the facial constitutionality of a criminal statute de novo. *See Casey v. State*, 349 S.W.3d 825, 828 (Tex. App.—El Paso 2011, pet. ref'd) (citing *Esparza v. State*, 282 S.W.3d 913, 921 (Tex. Crim. App. 2009)).

### (2) Analysis

Burciaga challenged a portion of the human smuggling statute by asserting it was facially unconstitutional because every application of it had the potential to conflict with federal immigration policy.

The INA provides that a person commits a criminal offense when, in "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, [he] transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in furtherance of such violation of law." 8 U.S.C.A. § 1324 (a)(1)(A)(ii). The same section also makes it an offense for a person who in "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law, conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, such alien in any place, including any building or any means of transportation." *Id.* at § (a)(1)(A)(iii). The INA allows local law enforcement to make arrests for violations of immigration law, but "the federal courts maintain exclusive jurisdiction to prosecute for these crimes and interpret the boundaries of the federal statute." *Ga. Latino All. for Hum. Rts. v. Governor of Ga.*, 691 F.3d 1250, 1263–64 (11th Cir. 2012) (citing 8 U.S.C. § 1329). Courts generally agree that a state regulation that specifically targets the smuggling of noncitizens is deemed preempted because the clear and manifest purpose of Congress was to completely oust state power from this area of regulation leaving no room for analogous state crimes. *See id.* at 1263–64; *see also Villas at Parkside Partners v. City of Farmers Branch, Tex.*, 726 F. 3d 524, 531 (5th Cir. 2013) (holding that a state law criminalizing the "harboring" of undocumented people was preempted by federal law).

Burciaga asserts that a case from the Western District of Texas supports his preemption argument. *See Cruz v. Abbott*, 177 F. Supp. 3d 992, 1021 (W.D. Tex. 2016), *rev'd on other grounds*, 849 F.3d 594 (5th Cir. 2017). There, individuals and groups who provided legal services, food, clothing, and shelter to noncitizens filed suit. *Id.* at 999. The court analyzed Texas Penal Code § 20.05(a)(2), which is not the same provision at issue in this appeal. *Id.* at 1007. At issue

13

here, § 20.05(a)(1)(A) applies to any "person" who transports any "individual" with the intent to conceal that individual from law enforcement. Although there is some overlap between certain applications of § 20.05(a)(1)(A) and the federal scheme, we do not agree that the clear and manifest purpose of the federal law barred state prosecutions for criminal smuggling of all persons. *DeCanas*, 424 U.S. at 357–58. "Whatever the purpose or purposes of the state law, pre-emption analysis cannot ignore the effect of the challenged state action on the pre-empted field." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 107 (1992). "The key question is thus at what point the state regulation sufficiently interferes with federal regulation that it should be deemed pre-empted under the Act." *Id.* The legislative history of the human smuggling statute does show an intent on the part of Texas legislators to facilitate the prosecution of criminal traffickers who prey upon vulnerable persons—citizens or not—which, as all parties here agree, is a legitimate realm of state criminal law. House Comm. on Crim. Just., Tex. H.B. 260, 82nd Leg., R.S. (2011). Accordingly, despite Congress's possible intent to preempt state criminal statutes that directly criminalize the smuggling of noncitizens, we conclude that Congress did not intend to preempt neutral state smuggling statutes like § 20.05(a)(1)(A).

The federal statute restricts liability to situations in which the transportation is "in furtherance" of smuggling. *See* 8 U.S.C. § 1324(a)(1)(A)(ii). In addition, the federal statute sets out no mandatory minimum sentence and a five-year or ten-year maximum (depending on whether the offense was done for the purpose of commercial advantage or private financial gain); the current Texas statute sets out a two-year minimum sentence and a ten-year or 20-year maximum (depending on whether the offense was committed with the intent to obtain a pecuniary benefit). 8 U.S.C. § 1324(a)(1)(A)(ii), (iii), (B)(ii); Tex. Penal Code Ann. §§ 20.05(a), (b), (b)(1)(C), 12.23, 12.34. The Texas statute applies to any "person" who transports an "individual" with the intent to

14

conceal that individual from the police, regardless of the citizenship status of either person. *See* Tex. Penal Code Ann. § 20.05(a)(1)(A). Although some applications of § 20.05(a)(1)(A) may conflict with the federal act's comprehensive scheme or with the federal government's discretion over immigration-related prosecutions, when the laws are applied to citizens, those concerns are simply not implicated. Accordingly, preemption cases involving statutory language that singles out the transporting or harboring of noncitizens are distinguishable and not controlling. *See Flores*, 679 S.W.3d at 247 (collecting cases).

Texas exercised its police powers in passing a statute that applies equally to those who smuggle citizens as to those who smuggle noncitizens. *See* Tex. Penal Code Ann. § 20.05(a)(1)(A). The fact that some applications of the law could implicate federal immigration priorities does not mean that the statute conflicts with federal law. *See DeCanas*, 424 U.S. at 355 ("[T]he Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power, whether latent or exercised.").

The statute, as written, does not regulate immigration, it was not enacted contrary to the clear and manifest purpose of Congress to occupy the field, and it does not operate as an obstacle to the accomplishment of the purposes of Congress. *See Kansas*, 140 S. Ct. at 806–07; *DeCanas*, 424 U.S. at 355–63. Thus, we reject Burciaga's facial preemption challenge to the statute and conclude the trial court's order cannot be upheld on this ground. Accordingly, we sustain the remaining part of the State's first issue.

### (C) Vagueness

In the remaining part of the State's fourth issue, it contends the trial court's quashing of the indictment based on constitutional vagueness is without merit.

15

### (1) Applicable law

"'The prohibition of vagueness in criminal statutes,' . . . is an 'essential' of due process, required by both 'ordinary notions of fair play and the settled rules of law.'" *Sessions v. Dimaya*, 584 U.S. 148, 155 (2018) (quoting *Johnson v. United States*, 576 U.S. 591, 595–96 (2015)). "The void-for-vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes." *Sessions*, 584 U.S. at 155–56. As the United States Supreme Court explained, "[t]he doctrine guards against arbitrary or discriminatory law enforcement by insisting that a statute provide standards to govern the actions of police officers, prosecutors, juries, and judges." *Id*. Either a lack of fair notice or a lack of standards for law enforcement provides a basis for a facial vagueness challenge. *Ex parte Jarreau*, 623 S.W.3d 468, 472 (Tex. App.—San Antonio 2020, pet. ref'd). When a vagueness challenge involves First Amendment considerations, the criminal law can be held facially invalid even though it may not be unconstitutional when applied to the defendant's conduct. *State v. Doyal*, 589 S.W.3d 136, 144 (Tex. Crim. App. 2019). This is so because "[i]t has long been recognized that the First Amendment needs breathing space and that statutes attempting to restrict or burden the exercise of First Amendment rights must be narrowly drawn and represent a considered legislative judgment that a particular mode of expression has to give way to other compelling needs of society." *Broadrick v. Oklahoma*, 413 U.S. 601, 611–612 (1973). But there are recognized limits for other claims. "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Id*. at 610. A facial challenge to the constitutionality of a criminal statute raises questions of law, which an appellate court reviews de novo. *Ex parte Lo*, 424 S.W.3d at 14.

### (2) Analysis

In his motion to quash, Burciaga asserted that § 20.05(a)(1)(A) is facially vague because it fails to provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited, and it fails to establish definite guidelines for law enforcement. He contends that, based on how the provision is written, the crime is accomplished the instant an individual desires any financial benefit and intends to conceal someone from a police officer. He argues that various hypotheticals illustrate his point. For example, he asks rhetorically, "[w]ould a game of hide and seek, with a monetary prize at stake, involving an off-duty police officer as the searcher, violate the statute?" And he asks, "would a taxi driver picking up a passenger who wants to avoid their friend, a police officer," also lead to a violation.

In *Flores*, the same hypotheticals were posed by multiple defendants, who were all charged with the same offense as Burciaga, and who similarly brought vagueness challenges. *See Flores*, 679 S.W.3d at 251. There, our sister court of appeals in San Antonio held that *Broadrick* was controlling of the case. *Id*. (citing *Broadrick*, 413 U.S. at 610–11). That is, as the United Sates Supreme Court explained, even if the outermost boundary of a challenged statute is imprecise, the resulting uncertainty has little relevance, where a charged defendant's conduct falls squarely within the "'hard core' of the statute's proscriptions." *Broadrick,* 413 U.S. at 610–11.

Burciaga also argues that the statute's vagueness allows for arbitrary enforcement because the offense is enforced in the singular context of transporting noncitizens. We disagree. The wording of the provision establishes minimal guidelines governing law enforcement. *Flores*, 679 S.W.3d at 251. As *Flores* determined, it conveys a sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices. *Flores*, 679 S.W.3d at 251.

17

We conclude that Burciaga failed to establish the statute was facially vague. Thus, the trial court erred to the extent it granted the motion to quash on Burciaga's vagueness claim. Accordingly, we sustain the remaining part of the State's fourth issue.

**(D)  The Fourth Amendment**

In the remaining part of its fifth issue, the State asserts § 20.05(a)(1)(A) is not unconstitutional based on violating the Fourth Amendment.

**(1)  Applicable law**

The Fourth Amendment provides that, "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures shall not be violated . . . ." U.S. Const. amend. IV. As described by the United States Supreme Court, "[n]o right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Fundamentally, the Fourth Amendment prohibits unreasonable "seizures" to safeguard "[t]he right of the people to be secure in their persons." *Torres v. Madrid*, 592 U.S. 306, 309 (2021). In this context, the arrest of a person is the quintessential seizure of a person under our Fourth Amendment jurisprudence. *Id*. at 311.

"[F]acial constitutional challenges under the Fourth Amendment are not categorically barred or especially disfavored." *Patel*, 576 U.S. at 415. As in other facial challenges attacking a statute itself and not a particular application, Fourth Amendment challenges are "the most difficult." *Id.*

**(2)  Analysis**

In challenging a portion of the human smuggling statute, Burciaga contends it criminalizes protected conduct, namely, the right of a person to assist another person to avoid police. Relying

on *Gurrola v State*, 877 S.W.2d 300, 303 (Tex. Crim. App. 1994) (en banc), he urges that an individual protected by Fourth Amendment rights has a "constitutional right to walk away and not answer any questions put to him without such action [itself] creating reasonable suspicion in the mind of the officer that criminal activity was afoot." There, the Court of Criminal Appeal reiterated there is nothing unlawful about an individual walking away when an officer attempts to question him or her. *Id*. at 302. On this premise, he argues it follows that, because the challenged statute "does not require that the passenger that the driver intends to conceal (1) has committed a crime, (2) is under reasonable suspicion for committing a crime, or (3) is otherwise legitimately sought by police," its only function is to criminalize conduct protected by the Fourth Amendment. He contends it violates the Fourth Amendment by not requiring the police to have a legitimate or cognizable reason to discover the person being concealed. We disagree.

Generally, facial constitutional challenges under the Fourth Amendment are limited to statutes that authorize warrantless seizures, not to penal laws criminalizing conduct. *Patel*, 576 U.S. at 428 (holding facially invalid on Fourth Amendment grounds a municipal code provision). In *Patel*, the law at issue allowed police to inspect a hotel registry information on demand. *Patel*, 576 U.S. at 421. The provision made the failure to make the record available punishable as a criminal misdemeanor and it subjected the hotelier to immediate arrest. *Id.* at 421. A group of motel operators challenged the statute asserting it was facially unconstitutional because it did not provide the hotel operator with an opportunity to have a neutral decisionmaker review an officer's demand to search the registry before the operator faced penalties for failing to comply. *Id.* The U.S. Supreme Court held that, when applying the no-set-of circumstances standard to a statute authorizing warrantless searches, that in such case:

19

the proper focus of the constitutional inquiry is searches that the law actually authorizes, not those for which it is irrelevant. If exigency or a warrant justifies an officer's search, the subject of the search must permit it to proceed irrespective of whether it is authorized by statute. Statutes authorizing warrantless searches also do no work where the subject of a search has consented. Accordingly, the constitutional "applications" that petitioner claims prevent facial relief here are irrelevant to our analysis because they do not involve actual applications of the statute.

*Id.* at 418–19.

Burciaga asserts that, here, it would not matter if, in some cases, law enforcement had sufficient probable cause or consent to search because the law was facially invalid by authorizing seizures when police otherwise had no legitimate basis. Burciaga also complains that § 20.05(a)(1)(B) validly criminalizes the conduct of a driver who assists the escape of a passenger whom the police have a legitimate, constitutional reason to detain. In contrast to that provision, he points out that § 20.05 (a)(1)(A) does not pass constitutional muster because it criminalizes the mere act of transporting persons with intent to innocently conceal them. However, the State's ability to prosecute under another statutory provision does not necessarily undermine its ability to prosecute under a different provision. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [its] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978).

Ultimately, *Patel*, and the authority it relies on, address search regimes permitting searches or seizures without a warrant or probable cause. *Patel*, 576 U.S. at 416–17. Yet § 20.05(a)(1)(A) particularly defines the criminal conduct at issue. Under the actus reus requirement, a person charged must have transported another person. *See id.* Under the mens reus requirement, the defendant must have acted with the specific intent to conceal that person from police. *See id.*; *see*

*also United States v. U.S. Gypsum Co.*, 438 U.S. 422, 436 (1978). Without probable cause to believe that both conditions have been met, no legal seizure is possible. *State v. Espinoza*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023) ("Probable cause exists under Article 14.01(b) if, when the arrest is made, the facts, circumstances, and reasonably trustworthy information known to the arresting officer, are sufficient for a prudent person to conclude that an individual committed or was committing a criminal offense.").

Additionally, § 20.05(d) relatedly provides: "If conduct constituting an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections." Tex. Penal Code Ann. § 20.05(d). The inclusion of this provision within the statutory scheme shows the legislature wanted the challenged provision to be available as a tool to punish proscribed conduct, even if other code sections also prohibited the same conduct. *See Flores*, 679 S.W.3d at 250 (collecting cases).

For all these reasons, we disagree that the challenged portion of the statute is facially unconstitutional in violation of the Fourth Amendment. Thus, we conclude the trial court erred in granting the motion to quash on Burciaga's Fourth Amendment claim. Accordingly, we sustain the remaining part of the States's fifth issue.

## VI. CONCLUSION

We reverse the trial court's order quashing the indictment and remand the cause for further proceedings.


GINA M. PALAFOX, Justice


21

August 23, 2024

Before Alley, C.J., Palafox, and Soto, JJ.
Alley, C.J., concurring
Soto, J., dissenting

(Do Not Publish)