

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0149-23

---

## THE STATE OF TEXAS

### v.

## IVAN GABALDON, Appellee

---

## ON STATE'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE EIGHTH COURT OF APPEALS
## EL PASO COUNTY

---

SCHENCK, P.J., filed a concurring opinion.

# O P I N I O N

In this case, the trial court chose to remedy a finding of prosecutorial vindictiveness by dismissing the indictment with prejudice. The majority holds that doing so was an abuse of discretion, while Judge Finley's dissent finds no other adequate remedy. I write separately to ascertain a remedy between these two

extremes, address the standard of review, and expand on what I see as available remedies for a finding of vindictive or otherwise unconstitutional prosecution.

As detailed below, I believe the factual determination of prosecutorial vindictiveness is best left to the trial court and should be reviewed for clear error. The question of the permissible remedies is a critical one and antecedent to any analysis of the exercise of discretion in selecting among them. The task of identifying those remedies is primarily on this Court and, in my view, is in urgent need of development to address the risk of prosecutorial abuse. While the trial courts obviously share in this task, the decision of *whether* a remedy is potentially viable would be reviewed *de novo* and should be addressed regardless. The selection *among* remedies should then be reviewed for abuse of discretion.

I see no abuse in selecting *some* remedy here and disagree with the majority's finding of an abuse of discretion in the lower court's selection of the only available option this Court has identified to remedy the unconstitutional abuse at issue here. That said, I also see dismissal at this stage[1] as extreme and inappropriate given the circumstances, as it imposes the consequences of the prosecutor's misconduct on an innocent public and should be reserved for prosecutions that would not otherwise have been brought but for a due process violation. Because I doubt the trial court

---

[1] I share in Judge Finley's thoughtful concerns with respect to timing. I would, however, allow the trial court to address that question first and after being afforded an opportunity to decide what, other than nothing, should be done as a result of the prosecutorial abuse.

would have selected that option were another available, I believe we should make clear that disqualification of the District Attorney *is* available as a remedy for a constitutional violation by that office. While we have not identified this option previously, I believe it is vital we do so now in view of developments in our jurisprudence over the last several decades precluding other, structural forms of constitutional oversight to check abuse of the prosecutorial function. To the extent the majority opinion may be read to foreclose this option to the trial judge on remand, I disagree.

I will address these points in turn.

## DISCUSSION

### I. THE STANDARD OF REVIEW FOR VINDICTIVE PROSECUTION DETERMINATIONS

The majority evaluates both the trial court's factual finding of prosecutorial vindictiveness and its rulings under an abuse of discretion standard, affording almost total deference to the trial court's determination. Maj. Op. at 11–13. The State does not challenge the trial court's factual finding of vindictiveness. The majority, however, appears to address the factual question of vindictiveness through the lens of abuse of discretion. That standard is known to be "the most deferential standard of review available with the exception of no review at all." Martha S. Davis, *A Basic Guide to Standards of Judicial Review*, 33 S.D. L. REV. 469, 480 (1988).

The abuse of discretion standard has varying applicability stemming from the trial court's primary role in managing its docket and the movement of cases. The standard's early development began in the civil context, and its application slowly expanded to a wider variety of issues, such as admission of expert testimony and *voir dire*. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141–42, 146 (1997) (citing *Spring Co. v. Edgar*, 99 U.S. 645, 658 (1879)); *Connors v. United States*, 158 U.S. 408, 415–16 (1895). It also may play a proper role in contexts of mixed questions of law and fact[2] where the trial judge's decision required observation of witnesses and a determination of their credibility.[3] I have no concerns with its application to docket management, evidentiary rulings, and other matters that should generally defy appellate micro-management after judgment. But the question of whether something has happened that might trigger the need for the exercise of judicial judgment is a distinct inquiry. I am not inclined, as a general matter, to license the trial courts to self-declare the need for the exercise of their own discretion.

Thus, I do not subscribe to abuse of discretion as the proper standard for our review of the factual determination of prosecutorial vindictiveness. Instead, I believe the analysis should be two-fold: first, we should determine whether the

---

[2] *State v. Cortez*, 543 S.W.3d 198, 203–04 (Tex. Crim. App. 2018).

[3] Of course, regard for the trial court's observation of witnesses is also accounted for in other standards, like clear error.

finding of vindictiveness was clearly erroneous; and second, whether the trial court abused its discretion in ordering dismissal or any other remedy.

While we have neither clearly embraced clear error nor formally announced it as the proper standard to govern the factual determination of vindictiveness, we have signaled as much in *Neal v. State*, 150 S.W.3d 169, 174 n.15 (Tex. Crim. App. 2004) (citing federal clear error standard but avoiding resolution on waiver grounds). Our courts of appeals have routinely relied on that declaration and deploy the clear error standard in reviewing factual findings of vindictiveness.[4]  Additionally, "the majority of federal circuits that have addressed the standard of review for claims of prosecutorial vindictiveness review the district court's factual findings for clear error and its legal rulings de novo." *Simms v. United States*, 41 A.3d 482, 487 (D.C. 2012) (collecting cases); *United States v. Dvorin*, 817 F.3d 438, 455 (5th Cir. 2016) (citing *United States v. Saltzman*, 537 F.3d 353, 359 (5th Cir. 2008)); *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir.1987).[5]

---

[4] Our courts of appeals have applied the clear error standard in reliance on *Neal*. *See Amaya v. State*, No. 08-11-00265-CR, 2013 WL 5593110, at *8 (Tex. App.—El Paso Oct. 9, 2013, no pet.); *Ex parte Legrand*, 291 S.W.3d 31, 42 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd); *Guerra v. State*, No. 13-04-328-CR, 2005 WL 2878071, at *2 (Tex. App.—Corpus Christi–Edinburg Nov. 3, 2005, pet. ref'd); *Ex parte Hilliard*, No. 08-22-00179-CR, 2023 WL 4678675, at *4 (Tex. App.—El Paso July 21, 2023, no pet.).

[5] For purposes of evaluating a federal vindictiveness claim, it appears the United States Supreme Court has not weighed in as of yet.  *Cf. Ornelas v. United States*, 517 U.S. 690, 698-99 (1996) (while district court findings of probable cause and reasonable suspicion should ultimately be reviewed *de novo*, findings of historical fact should be reviewed for clear error).

I find these cases persuasive and see no reason to depart from their interpretation of United States Supreme Court precedent, nor from our own earlier *Neal* decision. Under the clearly erroneous standard, we would still give significant, if not nearly complete deference to the trial court's finding. Specifically, we would affirm unless, after examining the entire record, we are left with the definite and firm conviction that a mistake has been committed. *Cooper v. Harris*, 581 U.S. 285, 309 (2017); *Alexander v. S.C. State Conference of the NAACP*, 602 U.S. 1, 18 (2024).

Furthermore, neither the U.S. Supreme Court nor this Court have limited the presumption of prosecutorial vindictiveness to post-conviction situations where a defendant has exercised his right to an appeal and obtained a new trial.[6] In all events, dismissal for vindictiveness before trial *should* be available in extreme cases where the prosecution would not have been brought but for the abuse. *See, e.g.*, *State v. Hill*, 558 S.W.3d 280, 288 (Tex. App.—Dallas 2018, no pet.) (Schenck, J., concurring) (three justices agree on vindictiveness to affirm pretrial dismissal with prejudice; two also find due process disqualification). The power to prosecute, no less than the power to tax,[7] can just as obviously operate as the power to destroy.

---

[6] *See, e.g., United States v. LaDeau*, 734 F.3d 561, 567 (6th Cir. 2013) ("[It] is incorrect to suggest that *Goodwin* categorically bars a district court from finding that the requisite 'stake' could arise in the pretrial setting."); *United States v. Barner*, 441 F.3d 1310, 1317–18 (11th Cir. 2006) ("[N]othing in the language or rationale of *Goodwin* rules out the possibility that a case could present additional factors that would make it appropriate to use the presumption in a pretrial setting."); *Simms*, 41 A.3d at 488 ("[A] presumption of vindictiveness is available pretrial.").

[7] *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819).

Relief from an abusive prosecution after the fact may not be relief at all. While the facts of this case do not warrant outright dismissal, they do evidence vindictiveness beyond the reach of clear error attack, proving the point that some remedy and oversight is necessary.

The prosecutor here faced a speedy trial invocation, sought a continuance, and lost. His response was to dismiss the existing case, reindict, and add pursuit of the death penalty. The trial court was well within its bounds to find this prosecutor's action vindictive of *this defendant's* speedy trial assertion. Yet the prosecutor's action was even more than that; it reflected a contempt of the defendant's place in a constitutional order and for the court itself. Forcing the defendant and the judge to submit to a trial in anticipation of later appellate relief ignores the nature of the injury, undermines the authority of the court, and, most importantly, serves as little restraint on an abuse of power. Where, as here, the fact of abusive prosecution is beyond doubt, a trial judge's decision to impose a remedy sufficient to correct the abuse and send a clear message sufficient to deter repetition from the same office is not just within the trial judge's discretion, it's essential to maintaining constitutional order.[8]

---

[8] The happenstance that a district attorney or the assistant prosecutor most responsible for the abuse is no longer with the offending office does not control that exercise of discretion. If the local district judge believes that a cannon shot through the hallway is necessary to communicate to the current and future generation of local prosecutors that abuses will not be tolerated, I would defer to that judgment. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (stressing

## II. DECLARING THE REMEDY FOR VINDICTIVE PROSECUTION

The majority's opinion concludes that the trial court abused its discretion in fashioning a remedy for its vindictiveness finding. I agree with the majority that dismissing a case with prejudice is a "drastic" measure, but I do not think the trial court necessarily exceeded its authority in imposing that remedy if it was the only remedy available. Maj. Op. at 28. However, I believe others were and should be available.

In its analysis, the Court has forgone what I think to be a necessary discussion of the due process right and this State's Constitution, as well as the role of the courts—including and especially this Court's role—in developing that law. The remedy question is, at least initially, purely legal and one this Court is obliged to develop. *See Owens v. State,* No. PD-0075-24, 2025 WL 1587690, at *11 n.6 (Tex. Crim. App. June 4, 2025) (Parker, J., concurring and dissenting, joined by Schenck, P.J.). As detailed below, I would develop that legal question before reversing the trial court and allow it to first exercise its discretion in selecting among the available remedies before reversing. As it stands, it appears we have come to two extreme

---

deterrent objective of sanctions for civil misconduct). "A [Texas] trial court has inherent power to sanction bad faith conduct during the course of litigation that interferes with administration of justice or the preservation of the court's dignity and integrity." *Onwuteaka v. Gill*, 908 S.W.2d 276, 280 (Tex. App.—Houston [1st Dist.] 1995, no writ). In my view, that power does not obtain only in civil proceedings.

and different conclusions in this case. Neither is mandatory or proper in my view.[9] Instead, I would make clear that a district court faced with prosecutorial abuse may fashion another remedy, including removal of the district attorney from the case and substitution of either the Attorney General or a neighboring district attorney, or any other means he or she believes is necessary to maintain the integrity of the judiciary.

### A. Abuse of the Prosecutorial Office Affects the Entire Judicial Process

The prosecutorial vindictiveness claim is rooted in due process and in this State's Constitution. The Due Process Clause prohibits a prosecutor from punishing a defendant for exercising his lawful constitutional or statutory rights. *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."); *United States v. Goodwin*, 457 U.S. 368, 372 (1982) ("[W]hile an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.").

---

[9] As I will discuss, the first question is whether any other option is available. I would answer that legal question "yes" and believe it is emphatically our duty to articulate such options. While I might be inclined to select that third option were I a district court, that is a decision best left to the trial court which is closest to the facts and actors at issue and should be reviewable only for abuse thereafter.

### B. A Dismissal Remedy for Vindictiveness is Necessary, but Should Not Be Lightly Imposed on the Public or the Defendant Who Suffers the Abuse

The majority frowns on dismissal with prejudice as a remedy here. I share that concern. I also agree that a trial court's actions must be supported in one of four ways: by the Constitution, statute, common law, or where the power to act arises from its inherent or implied power. *State v. Johnson*, 821 S.W.2d 609, 612 (Tex. Crim. App. 1991). To narrow our focus, we can start by ruling out the two former circumstances; Texas has no specific constitutional provision or statute authorizing the trial court to dismiss a case with prejudice without the prosecution's consent or on its own motion.

The Texas Legislature once permitted dismissal with prejudice under the Speedy Trial Act, wherein dismissal for violation of a defendant's Sixth Amendment speedy trial right was automatically with prejudice, which was codified in Article 28.061 of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PRO. ANN. art. 28.061. However, this Court held that provision unconstitutional as a violation of separation of powers within the Texas Constitution. *Ex parte Young*, 213 S.W.3d 327, 331–32 (Tex. Crim. App. 2006). Naturally, our common law likewise provides no such authority. *Johnson*, 821 S.W.2d at 613. This and other like holdings (discussed further below) would appear to leave little room for any statutory basis for constraining the abuse of the power to prosecute. Still, this Court has recognized

its authority (and hence obligation) to uphold the Constitution's substantive speedy trial command.  *Zamorano v. State*, 84 S.W.3d 643, 649 (Tex. Crim. App. 2002).

This would appear to leave the question of whether a trial court's authority to dismiss with prejudice arises from its inherent or implied power, which the majority answers in the negative.  Maj. Op. at 28-29.  I see that question somewhat differently at least insofar as inherent power is intertwined with this Court's general constitutional mandate of administration or to various specific constitutional mandates in the Bill of Rights.  *See* TEX. CONST. art. V, § 21 (mandating open courts and remedy for injuries).

I concede the Constitution does not speak—directly at least—to virtually all the potential abuses that may occur in our courts and before our grand juries beyond demanding that its citizens be afforded "due course of law."  It instead created a bi-furcated appellate system with one court (this one) responsible for the management of all criminal law matters, including what course of law is "due" and what remedy (if any) should follow from departure.  That requires stewardship and oversight of the inferior officers and other actors within the judicial branch playing a role in those matters.  Accountability, like charity, starts at home.

A hallmark of our rule-based, republican form of government is that "[e]very right, when withheld, must have a remedy." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 147 (1803).  As these problems will come in a myriad of forms and in individual

cases, we cannot assume a passive posture and await guidance from elsewhere, particularly where we have foreclosed it under our separation of powers decisions. As I see it, the judiciary possesses the primary check on the enforcement of the rule of law *within the judicial department itself* through the exercise of judicial power. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 124 (2015) (Thomas, J., concurring). This check exists to ensure that the government generally respects constitutional values, integral to our role in maintaining the rule of law. *See* Richard H. Fallon Jr. & Daniel J. Meltzer, *New Law, Non-Retroactivity, and Constitutional Remedies*, 104 HARV. L. REV. 1731, 1788 (June 1991). To sit on our hands while the office of prosecutor makes its own law or functions apart from the constitutional order would be a mistake.

When determining which remedy may be proper to redress a violation of a constitutional right, we should consider the broader remedial principals from our Constitution. Daniel J. Meltzer, *Congress, Courts, and Constitutional Remedies*, 86 GEO. L.J. 2537, 2538 (July 1998). It is not a simple inquiry, and it requires us to assess and understand our constitution's history, text, and structure. *Id.* Constitutional remedies serve two basic functions: first, to redress individual violations; and second, to reinforce values underlying the separation of powers and the rule of law. Richard H. Fallon Jr. & Daniel J. Meltzer, *New Law, Non-*

*Retroactivity, and Constitutional Remedies*, 104 HARV. L. REV. 1731, 1787 (June 1991).

## III.  REMEDIES CAN ONLY COME FROM WITHIN THE JUDICIARY AT THIS POINT

The majority seeks to ascertain the amount of authority the Legislature has conferred on the judiciary to police vindicative or abusive prosecutions.  Maj. Op. at 29–30.  Though well-reasoned in this regard, to me the valuation is irrelevant and underscores the underlying, structural constitutional problem.  A disagreement between the surgeon and the anesthetist over who has less authority in the operating room still leaves the patient to die on the table.  As detailed below, we have already effectively kicked the anesthetist in the shins and left little room for anyone *but us* to come up with a remedy more meaningful than the one employed here.

Meanwhile, the problem of abusive prosecutions (and arrests) persists across the country, making one wonder how it might ever be checked in Texas.  *See, e.g.*, *People by James v. Trump*, No. 2023-04925, 2025 WL 2412681, at *108–12 (N.Y. App. Div. Aug. 21, 2025) (Friedman, J., concurring in part and dissenting in part) (stressing need to judicially correct abusive political litigation brought by state attorney general).[10]  While we have dithered over the proper source of authority to

---

[10] Had the same case been brought in Texas, I wonder what authority my colleagues imagine we would have to correct it—particularly if we are obliged to await legislative invitation that we would ultimately say is beyond the authority of the Legislature in the first place?

oversee and correct abuse of the authority to initiate criminal proceedings and whether or to what extent the Legislature can constrain the exercise of that power, the U.S. Supreme Court and other courts have acted. *E.g.*, *id.*; *see also Gonzales v. Trevino*, 602 U.S. 653, 655 (2024) (Texas official arrested on charges, even if supported by probable cause of violation, but whose pursuit could not be explained but for constitutional vindictiveness finds a constitutional remedy in federal court).[11]

I view our "duties and responsibilities" as including the obligation to oversee unconstitutional abuses of our constituents via misuse of the courts by inferior officers of the judiciary. This Court has often held that "a trial court does not have the power to dismiss a case unless the prosecutor so requests." *Ex parte Seidel*, 39 S.W.3d 221, 223 (Tex. Crim. App. 2001). That may be fine as a general proposition, but these decisions are founded on the underlying notion that the "inherent judicial power of a court is not derived from legislative grant or specific constitutional provision, but from the very fact that the court has been created and charged by the constitution with certain *duties and responsibilities*." *Eichelberger*, 582 S.W.2d at

---

Regardless of which side of the aisle the abuse emanates from, the judiciary's obligation and authority to police it seems obvious.

[11] The federal constitutional standard for "vindictive," "retaliatory," or "malicious" prosecution and arrest is the same. *See Nieves v. Bartlett*, 587 U.S. 391, 401, 405, 407 (2019). Why our citizens would have to take a case to federal court to seek redress in either instance is what concerns me. Whether the case is brought for the sole apparent purpose of marketing the indictment to a contributor, *Hill*, retaliation for exercise of constitutional right as here, or a naked political intimidation effort, as in the *Gonzales* and *James* matters, the trial judge has the authority to end it.

398 (emphasis added). Given that we have largely eliminated other avenues for constitutional oversight of prosecutorial misconduct, I believe the Constitution requires us to act in cases like the one before us today.

We have recognized this oversight role in the past, if not with respect to dismissal. When a prosecutor maintains a conflict of interest rising to the level of a due process violation, this Court has already held a trial court may disqualify the conflicted prosecutor should he refuse to step down. *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex. Crim. App. 1994). More than ten years later in *Landers*, this Court explained a due-process violation may be found if the defendant has established "actual prejudice."[12] In her concurrence, Presiding Judge Keller analogized that situation to one where "the State assures an accused that exercising a certain right will carry no penalty." *Landers v. State*, 256 S.W.3d 295, 311 (Tex. Crim. App. 2008) (Keller, P.J., concurring). That same due process interest was applied by the majority in the Dallas Court of Appeals to mandate dismissal with prejudice where the prosecutorial abuse resulted in the initiation of a proceeding that would not otherwise have been initiated. *Hill,* 558 S.W.3d at 288.

---

[12] This case obviously does not present the question of whether a prosecutor might ever be permitted to initiate and pursue charges against his former client, as the Court in *Landers* considered, though *Landers* and the case before us both pose questions of due process violations.

### A. The Office of Prosecutor is Not a Fourth Department of Government Immune From any Form of Check or Balance

It is a testament to the skill and resolve of our county and district attorneys that we have confronted questions like this so rarely. Nevertheless, these questions do arise and will continue to do so with increasing frequency if we do not identify some effective form of oversight from abuse, including dismissal, disqualification, and perhaps other remedies, if necessary to assure adherence to our constitutional form of government from all who operate within it. I would therefore overrule *Seidel* and its progeny to the extent those decisions operate on a contrary premise.

Whether one calls it inherent or implied power—or simply a recognition of the escalating responsibility to administer the judicial department[13]—some effectual remedy is necessary to check prosecutorial abuse, however rare it might be. TEX. CONST. art. II, § 1. To that end, it is important to consider how this decision plays into the unique structure of the Texas prosecutor and the existing precedent of this Court. Given development in this Court's jurisprudence in recent decades, that mandate takes on additional significance, requiring the court to effectuate these remedies where necessary, as that jurisprudence drives the other departments of government from participating in the discussion and formulating a solution. *E.g.*, *Young*, 213 S.W.3d at 331–32.

---

[13] The more our decisions drive others from the field, the more critical our oversight becomes.

Texas is unique in that it "establishes the offices of County and District Attorneys" under the "Judicial" department of government. TEX. CONST. art. V, § 21. Our Constitution provides that those officers "shall represent the State in all cases in the District and inferior courts in their respective counties . . . " and we have read this provision both to reach to criminal matters and to be exclusive. *Id.*; *see State v. Stephens*, 663 S.W.3d 45, 50 (Tex. Crim. App. 2021); *Meshell v. State*, 739 S.W.2d 246, 254 (Tex. Crim. App. 1987); *Young*, 213 S.W.3d at 331–32; *Seidel*, 39 S.W.3d at 223. These decisions carry serious implications. While nominally rooted in "separation of powers" concerns, they have effectively concentrated all power to initiate and preside over criminal cases in the judicial department and, in turn, this Court. This brings up two concerns.

*First*, I believe this was a mistake, however well-intentioned, and should be corrected to avoid what I see as a misdirection of power (and responsibility, whether we acknowledge it or not) into the judiciary and this Court. Our *Stephens* decision was well-written and reasoned within the limits of its own field of view. But it failed, in my view, to ask the controlling, first question in any separation of powers question raised by our Constitution: where did the framers place this power when they drafted Article II? In other words, if the power to investigate and initiate a criminal matter would have been understood to be executive in nature, *all, not some, of that power* would have resided exclusively in that department of government, except as

specifically otherwise permitted by the remaining constitutional text. Having skipped that question, the Court in *Stephens* focused on Article V's creation of the offices of county and district attorney, noting that it is the only provision authorizing the filing of cases in lower courts.[14]

Seizing on the fact that Article V authorized district and county attorneys to represent the state in the inferior courts,[15] we then treated that authorization as exclusive, driving the Legislature and the Executive departments from the scene and, hence, excluding any role for oversight or assignment of the power to the executive in any case,[16] regardless of its subject matter or implications. We never asked if this grant of authority was, instead, necessary to exercise to permit any portion of the authority otherwise assigned to the executive by direct operation of Article II.[17]

---

[14] Never mind that the section makes no reference to criminal law, indictments or the like, the first question is why is the power placed and acknowledged there?

[15] I recognize that the Court also pointed to the presence of the word "shall" in the constitutional text concerning county and district attorneys' representation in cases filed in their respective courts. That term connotes obligation more than exclusivity. Anyone who grew up in a household with siblings can understand this concept—our mother's words "you shall take out the trash" directed toward one sibling neither prevented nor foreclosed the possibility of any other being directed to the same task at any point in the future.

[16] Removal from office is a power this Court has not yet touched. It is, in all events, distinct from the right (if any) of our citizens to a remedy in any given case.

[17] Meanwhile, having found the language in Article V, Section 21 providing that county and district attorneys "shall" represent the state in the lower courts to be so comprehensive and mandatory as to preclude legislative recognition of a like role for the Attorney General—despite the text of Article IV so suggesting—every local county and district attorney is somewhere given the ability—despite the "shall" directive—to decline to represent the state and instead to confer that power on the Attorney General. "Shall," it would seem, becomes "may" or "may not," and

The U.S. Supreme Court has repeatedly characterized the power to "investigate and prosecute crimes" to be "a quintessentially executive function" since before the time of enactment of our Constitution in 1876. *Trump v. United States*, 603 U.S. 593, 620 (2024); *Morrison v. Olson*, 487 U.S. 654, 706 (1988) (Scalia, J., dissenting); *Heckler v. Chaney*, 470 U. S. 821, 832 (1985); *Buckley v. Valeo*, 424 U. S. 1, 138 (1976); *United States v. Nixon*, 418 U. S. 683, 693 (1974); *The Confiscation Cases*, 74 U.S. 454, 457 (1869). Meanwhile, our plain constitutional text makes clear that Texas county and district attorneys, though placed in Article V, are not exercising a judicial power. TEX. CONST. art. V, § 1 (listing those on whom the judicial power is vested and omitting county and district attorneys). That being the case, the power to prosecute would have been assigned directly to the executive branch by the plain language of Article II, with any particular assignment (or reservation) of that power left to the Legislature as indicated by the text of Article IV, Section 22 conferring on the Legislature the authority to add to the Attorney General's executive function "such duties as may be required."[18]

---

local attorneys are empowered to expand the authority of the Attorney General to that even the Legislature is denied by decision of this Court, if not Articles II and IV.

[18] Article II's text is plain and self-effectuating:

**Separation of powers of government among three departments**

The provision in Article V, Section 21 *authorizing* and mandating district and county attorneys to represent the state in the inferior courts was thus essential because Article II would have otherwise precluded it by direct operation of the last sentence of its text: "no person, or collection of persons, being of one of those departments, shall exercise any power, properly attached to either of the others*, except in the instances herein expressly permitted*." TEX. CONST. art. II, § 1 (emphasis added).

*Second,* this oversight and this result, in my view, ignored general *separation* of power norms and, ironically, placed all authority for oversight of criminal prosecutions in a single department of government.[19] While the Constitution's text explicitly invited legislative enlargement of the Office of the Attorney General through which the framers provided a functional balance of authority among the three departments, we rejected its application to the prosecutorial function over Judge Yeary's dissent. Thus, we appear to have foreclosed the prospect of legislative

---

The powers of the Government of the State of Texas shall be divided into three distinct departments, ***each of which shall be confided to a separate body of magistracy***, to wit: those which are Legislative to one, ***those which are Executive to another***, and those which are Judicial to another; and ***no person, or collection of persons***, being of one of these departments, shall exercise any power properly attached to either of the others, ***except in the instances herein expressly permitted.***

TEX. CONST. art. II, § 1 (emphasis added).

[19] The concentration of the authority to initiate and preside over a criminal proceeding was the hallmark of an English system set up in the Star Chamber Act of 1487. It was eliminated by the Habeas Corpus Act in 1640 and precluded from revival in this country in Article IV, § 4 of the U.S. Constitution.

remediation of prosecutorial abuse, making oversight by this Court the only prospect of effectuating a remedy or assuring due course of law insofar as the use of the prosecutorial power is concerned. Unless and until we revisit our separation of powers decisions like *Young* and *Stephens*, we have left ourselves with no choice but to oversee the yielding of the power to prosecute as against abuses that would have the effect of undermining public confidence in the fairness of its courts.[20]

If this state is not to be subjected to the abuses of the prosecutorial function that has been seen elsewhere in recent years, it is only this Court that can remedy it.

### B. *Disqualifying the District or County Attorney Must Be an Option*

The trial court in this case chose to remedy its prosecutorial vindictiveness finding by dismissing the indictment with prejudice. I believe that decision must be available, if exercised only in rare circumstances, including cases of vindictiveness. The majority holds that in doing so here the trial court abused its discretion,[21] while Judge Finley's dissent finds that remedy appropriate through the operation of the

---

[20] The suggestion that courts might lack the power to hold rogue prosecutors accountable directly conflicts with the constitutionally-implied powers the courts must possess, at least in the civil context. *See Webster v. Comm'n for Lawyer Discipline*, 704 S.W.3d 478, 489–90 (Tex. 2024). Given the gravity of circumstances involved in criminal proceedings and the bifurcated nature of the Texas high courts, I doubt this implied power could simply disappear because this Court has not yet chosen to employ it. Nothing in Article V of our Constitution supports a contrary rule, *Stephens* notwithstanding.

[21] While the standard of review for a trial court's finding of prosecutorial vindictiveness is clear error, *ante* at 3–7, we review its imposition of a remedy for an abuse of discretion. *See State v. Terrazas*, 962 S.W.2d 38, 42 (Tex. Crim. App. 1998); *State v. Mungia*, 119 S.W.3d 814, 817 (Tex. Crim. App. 2003).

Constitution's speedy trial assurance. I disagree with either holding at this stage. Instead, I would first explicitly recognize the judicial power of oversight over the Office of the District Attorney and recognize the trial court's authority to disqualify that office as a remedy in a case[22] like this.[23] This would preserve the right to a merits-based resolution of an otherwise viable prosecution. I would generally reserve the remedy of dismissal with prejudice to circumstances where the prosecution would not have been initiated but for a due process abuse or where continuation of it is similarly barred. *State v. Hill,* 558 S.W.3d 280, 288 (Tex. App.—Dallas 2018, no pet.).

While I share Judge Finley's speedy trial concerns, I believe those concerns should first be addressed by the trial court.[24] To that end, I would first remand this case to permit that court to exercise its superior judgment over the available options recognizing the rights and interests of public in seeing its criminal laws enforced,

---

[22] This power would include the right to direct the case to an adjoining county or district attorney or to the Attorney General. I recognize that our *Stephens* decision (wrongly in my view) precluded the Legislature from exercising this authority when it does not have any logical application within the judicial department itself. Indeed, a contrary conclusion would render the District Attorney's Office a fourth branch of government immune from any constitutional correction at all.

[23] I appreciate the majority's concern for the limited authority (purportedly) conferred on us by the Legislature to oversee the conduct of our District Attorneys in the first place. But, if we believe—as we have repeatedly held—that the Legislature lacks constitutional authority to interfere with the operations of the Office of the District Attorney because it sits with us in the judicial branch, what authority would the Legislature have to confer and why would we await its exercise in any case?

the defendant to be free from abusive prosecution, and the government in promoting confidence in its actions and oversight of its inferior officers.

## <u>CONCLUSION</u>

At a minimum, before holding that the trial court abused his discretion, I would remand for consideration of other possible remedies, including disqualification of the District Attorney's Office, and defer to the trial court's discretion so long as the chosen remedy arguably lies within it.

Therefore, I concur in the majority's decision to reverse the ruling from the court of appeals, modify the trial court's dismissal to one without prejudice, and allow for reindictment of the offense or any offense qualifying as lesser included. However, I believe our Court is empowered to exercise its oversight to prevent the obstruction of justice, and thus ought to make clear that the trial court's options here are not restrained to a simple dismissal "with" or "without" prejudice.

Filed: September 3, 2025

Publish